UNITED STATES of America, Appellee,

v.

Ramon MARRERO, Defendant-Appellant.

No. 357, Docket 82–1135.

United States Court of Appeals,
Second Circuit.

Argued Nov. 3, 1982.

Decided April 12, 1983.

Marc J. Gottridge, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Walter P. Loughlin, Asst. U.S. Atty., New York City, on brief), for appellee.

David S. Zapp, New York City, filed a brief for defendant-appellant.

Before TIMBERS, KEARSE and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Ramon Marrero appeals from a judgment entered in the United States

District Court for the Southern District of New York after a jury trial before Charles E. Stewart, *Judge,* convicting him on two counts of armed bank robbery in violation of 18 U.S.C. § 2113(d) (1976).[1]  Marrero's chief contention on appeal is that the district court improperly granted the government a continuance because of the unavailability of certain witnesses, and that Marrero was therefore denied the speedy trial to which he was entitled under 18 U.S.C. § 3161–3174 (1976 & Supp. V 1981) ("Speedy Trial Act" or "Act").  Finding no merit in this or his other contentions, we affirm the conviction.

## BACKGROUND

### A.  *Pretrial Events*

The procedural facts do not appear to be in dispute.  Marrero was arrested on August 27, 1981, and charged with the armed robberies of two banks: a branch of the Knickerbocker Federal Savings and Loan Association ("Knickerbocker") on May 7, 1981, and a branch of Citibank on July 15, 1981.  A four-count indictment charging Marrero with participation in these two robberies was filed on September 3, and Marrero was arraigned on September 17. Marrero had been released on bond on August 27 and remained at liberty following his arraignment.

A pretrial conference was held on September 30, at which counsel for both sides agreed that trial would commence on November 30, 1981, and that the trial deadline under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), would be extended to December 10, 1981.[2]  The trial was later rescheduled for December 14, 1981, pursuant to an order of continuance consented to by both sides.

The information leading to Marrero's arrest had been supplied by Troy Perry and Fernando Miranda, who, having been arrested in the summer of 1981, had admitted participating in the Knickerbocker and Citibank robberies and had identified Marrero as a participant in both.  In the fall of 1981, the government gained additional information.  On November 18, law enforcement officers arrested one Amadeo Santiago in connection with the robbery on that date of a branch of Capital National Bank ("Capital").  Shortly after he was arrested, Santiago stated that he had robbed the Capital branch on instructions from Marrero (who was then on bail awaiting trial for the Knickerbocker and Citibank robberies), and that Marrero had planned the Capital robbery, recruited the robbers, and led them to the bank.  Santiago also implicated Marrero in yet another bank robbery, stating that he had been recruited by Marrero and Perry to rob a branch of Manufacturers Hanover Trust Company ("Manufacturers") on June 15, 1981.  Perry thereafter confirmed that he and Marrero had planned the Manufacturers robbery, recruited people to carry out the robbery, led them to the bank, waited outside while they robbed it, and collected and distributed the proceeds.

As a result of the new disclosures by Santiago and Perry, a superseding eight-count indictment was filed on November 30, 1981, charging Marrero with all four robberies.  *See* note 1 *supra.*  A new trial date of December 28, 1981, was set at the re-

---

1.  The final superseding indictment against Marrero charged him with having participated in four bank robberies.  For each robbery the indictment charged him with two offenses, to wit, one count of violation of 18 U.S.C. § 2113(a) (1976) and one count of violation of § 2113(d).  Eventually, he was tried and convicted with respect to only two robberies.  As to each robbery, the convictions under §§ 2113(a) and (d) merged, *see Grimes v. United States,* 607 F.2d 6, 15 (2d Cir.1979), and became convictions only under § 2113(d). Marrero was sentenced to two concurrent ten-year terms of imprisonment.

2.  Section 3161(c)(1) provides that the trial of a defendant who has not pleaded guilty to an offense charged in an indictment

> shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

Other subsections of § 3161 provide for the exclusion of various periods of delay in computing subsection (c)'s deadlines.

quest of Marrero's counsel, to allow him to study the new charges and prepare for trial on them.

Until shortly before the new trial date, the government expected its case against Marrero to consist principally of testimony by Perry, Miranda, and Santiago (hereinafter collectively the "accomplices"). The expectation was based largely on agreements executed by Perry and Miranda in August 1981, in which they had agreed to give testimony as government witnesses whenever required. Perry, pursuant to his agreement, had in fact testified for the government at a trial in October 1981. Although Santiago had not entered into a formal agreement, he had cooperated with the government by providing evidence that led to the indictment of Marrero with respect to the Capital and Manufacturers robberies. In December, however, within days of the scheduled commencement of trial, the government was informed by Perry, Miranda, and Santiago that none of them would testify against Marrero.

On December 24, 1981, at the government's request, the court held a hearing (1) to determine whether the accomplices' position was that they would refuse to answer questions about the robberies even if directed to do so by the court under a grant of immunity pursuant to 18 U.S.C. §§ 6002–6003 (1976), and (2) to consider an application by the government for a continuance in the event that they did take that position. At the hearing, Perry, Miranda, and Santiago were questioned under oath. Each refused to answer questions, in effect claiming the privilege against self-incrimination;[3] as to each the court signed an order granting immunity pursuant to §§ 6002 and 6003;

each witness thereafter persisted in his refusal to answer any questions, acknowledging that there was no legal basis for the refusal and that he could therefore be held in contempt.

As a result, the government moved for a continuance of the action on the ground that Perry, Miranda, and Santiago were essential witnesses and, by reason of their refusals to testify against Marrero notwithstanding the grants of immunity, were unavailable within the meaning of § 3161(h)(3) of the Speedy Trial Act. The government asked that the start of trial be delayed until after the last of the three had been sentenced in the cases pending against them, probably about February 23, 1982.[4] The court, over objection by Marrero, granted the continuance, stating that "under the circumstances it's clear that the government is unable to proceed with the trial." (Dec. 24, 1981 Tr. at 34.)

The court adhered to this decision on Marrero's motion for reargument and elaborated on its ruling as follows:

Defendant moves to reargue the motion for a continuance made by the government following a pretrial hearing on December 24, 1981. At the hearing it was determined that three witnesses for the government would not testify, despite immunization and a direction from the court to testify. Such a refusal rendered the witnesses "unavailable" within the meaning of 18 U.S.C. § 3161(h)(3)(A). Accordingly, we granted a continuance to the week of February 22, 1982.

The three witnesses were central to half of the government's case and relevant to the other half. The evidence to be offered by the three unavailable wit-

---

**3.** The questioning of Perry by the Assistant United States Attorney began as follows:

  Q  Mr. Perry, do you know the individual known as Ramon Marrero?
  A  I refuse to answer under the grounds that I may be intimidated [sic].
  Q  Do you know anything about a robbery at the Knickerbocker Federal Savings and Loan, 3478 Boston Road, Bronx, New York, on the 7th of May, 1981?
  A  I refuse to answer under the grounds that I may be intimidated [sic].

(Dec. 24, 1981 Tr. at 24.)  Perry's attorney explained that this was "in effect" a claim by Perry that his answers might tend to incriminate him.  (Id.)

**4.**  Perry and Miranda had pleaded guilty to various charges against them and were scheduled to be sentenced on February 23.  Santiago was scheduled to be tried on the charges against him on January 6.

nesses was not cumulative. As these witnesses were "essential", a continuance which is excluded from the speedy trial calculations was appropriate.

Order dated February 16, 1982.

**B.** *The Trial of the Knickerbocker and Citibank Counts*

In addition to presenting the testimony of Perry, Miranda, and Santiago, the government had planned to call as witnesses two employees of Knickerbocker and one employee of Citibank who had been present during the robberies of their respective banks. As to the Manufacturers robbery, the government had planned to call only one other witness; his testimony alone would not have sufficed to establish a prima facie case against Marrero. As to the Capital robbery, no witnesses other than Perry and Santiago had been planned. After the eleventh-hour refusals of Marrero's accomplices to testify, the government sought out additional eyewitnesses to the robberies. One additional witness was found with respect to the Knickerbocker robbery, and one was found with respect to the Citibank robbery. Apparently none were found with respect to Marrero's planning and behind-the-scenes leadership of the Capital and Manufacturers robberies. Accordingly, on the government's motion prior to trial, the counts relating to the latter two robberies were severed, and

Marrero was tried only on the counts relating to the Knickerbocker and Citibank robberies.

Trial commenced on March 10, 1982. Three employees of Knickerbocker who had been present at the May 7 robbery testified. All, prior to trial, had been shown photographic arrays; each had selected the photograph of Marrero as one of the robbers, and each so testified at trial. Only one of these witnesses, Sandra Vasquez, made an in-court identification of Marrero at the trial. With respect to the Citibank robbery on July 15, two Citibank employees, Lynda Dwyer and Anita Golden, testified. Each had similarly identified Marrero prior to trial from a photographic spread and each was able to make an in-court identification of Marrero at trial. Neither Golden nor Vasquez had been identified by the government as a possible trial witness before the government learned that the accomplices would not testify.

The jury convicted Marrero on all counts.

### DISCUSSION

Marrero's principal contention on appeal is that the court erred in granting the continuance and excluding the period of delay from Speedy Trial Act computations because the accomplices were not "essential" witnesses within the meaning of § 3161(h)(3). We disagree.[5]

---

**5.** We reject as well all of Marrero's other arguments, which include contentions that the identifications of him should have been excluded, and that even if they were properly admitted the evidence was insufficient to convict him.

As to the identifications, Marrero's contentions are, chiefly, that the photographic array was improper because it consisted of only six photographs and because the agent who supervised the witnesses' viewing of the array confirmed, after the witnesses had selected Marrero's picture, that they had selected the right person. The court properly rejected both the contention that an array of six is impermissibly small, *see United States v. Bennett,* 409 F.2d 888, 898–99 (2d Cir.) (six photographs adequate), *cert. denied,* 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969); *United States v. Boston,* 508 F.2d 1171, 1177 (2d Cir.1974) ("ten might be preferable," but there is "no magic number"), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975), and the contention

that agents' post-selection confirmatory comments are forbidden, *see United States v. Leonardi,* 623 F.2d 746, 754–55 (2d Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980). The question whether the identification procedures were impermissibly suggestive was for the district court to evaluate "in light of the totality of [the] surrounding circumstances." *Simmons v. United States,* 390 U.S. 377, 383, 88 S.Ct. 967, 970–971, 19 L.Ed.2d 1247 (1968). We see no error in its finding, after an evidentiary hearing, that "the procedures follow[ed] by the agent were not improperly suggestive." (Dec. 24, 1981 Tr. at 123.)

Finally, while the evidence against Marrero was not as compelling as it would have been had the accomplices testified, we conclude that the eyewitness testimony that was presented, was, when viewed in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), adequate to permit a rational juror to

The Speedy Trial Act's basic requirement that a defendant be brought to trial within 70 days of indictment or arraignment is tempered by the Act's provisions that various intervals are not to be counted as part of the 70-day period. Section 3161(h)(3), which excludes periods during which an essential witness is unavailable, provides, in pertinent part, as follows:

> (h) The following periods of delay shall be excluded in computing the time within which ... the trial of any such offense must commence:
>
> ....
>
> (3)(A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.
>
> (B) For purposes of subparagraph (A) of this paragraph, ... a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

■ The term "essential" is not defined in the Act. The legislative history reveals that by that limitation Congress meant to refer to witnesses whose testimony would be extremely important to the proceeding, perhaps providing proof that was not otherwise attainable. The Senate Judiciary Committee Report accompanying the bill that became the Speedy Trial Act stated as follows:

By an "essential witness" the Committee means a witness so essential to the proceeding that continuation without the witness would either be impossible or would likely result in a miscarriage of justice. For example, a chemist who has identified narcotics in the defendant's possession would be an "essential witness ...."

S.Rep. No. 1021, 93d Cong., 2d Sess. 37 (1974).

■ In the present case, we have no difficulty in sustaining the district court's ruling that Perry, Miranda, and Santiago were essential witnesses without whom the prosecution would be impossible or would likely result in a miscarriage of justice. As to the four counts of the indictment that dealt with the Capital and Manufacturers robberies, the anticipated testimony of Santiago and Perry was virtually the only evidence the government had. When those accomplices refused to testify, the government was left without a prima facie case that Marrero had any role in those robberies; and eventually, since even after being sentenced the accomplices persisted in their contumacy, the government was forced to sever, and not try, those counts.

Likewise as to the Knickerbocker and Citibank robberies the district court did not abuse its discretion in finding that the accomplices were essential witnesses within the meaning of § 3161(h)(3),[6] notwithstanding the fact that Marrero was eventually convicted without their assistance.[7] As

---

conclude beyond a reasonable doubt that Marrero had participated in the Citibank and Knickerbocker robberies as alleged.

6. Matters such as whether "a miscarriage of justice" "would likely result" are questions neither of law nor fact, but rather call essentially for the exercise of sound judgment by the district judge. The determination of such a question may be disturbed only if the judge has abused his discretion.

7. Our statement in *United States v. Didier*, 542 F.2d 1182, 1187 (2d Cir.1976), that the testimony of one Ashdown "was not necessary to the government's case, as is evidenced by the fact that appellant was ultimately convicted without it," cannot be taken as defining the essence of essentiality. Many factors distinguish *Didier* from the present case. First, *Didier* was not

decided under § 3161(h)(3) but rather partly under a speedy trial court rule allowing delay for "good cause," and partly under a superseding rule that allowed delay where the unavailability of a witness made an immediate trial impractical. Further, at issue in *Didier* was a 28-month delay during which we found that the government had acted with "inexcusable sluggishness," *id.*, had apparently made no effort to contact Ashdown to offer him immunity in return for testimony against Didier, *id.* at 1185, and had merely sought a tactical advantage rather than a witness who could provide unique testimony. The testimony of Ashdown, an alleged coconspirator with Didier, was neither unique nor necessary because the government had the benefit of the testimony of *another* coconspirator, Whiting. Whiting, who had cooperated with the government for several

Marrero points out in his brief on this appeal, "[t]here is no dispute that the bank robberies of May 7 and July 17 took place. The sole issue before the jury was whether Ramon Marrero was among the perpetrators." (Brief on appeal at 19.) Without the accomplices, the government could do no better than to produce eyewitnesses to the robberies who could testify to their selections of Marrero's picture from a photographic array, or perhaps identify him in court. The hazards of eyewitness identifications are well known, however, *see, e.g.,* Wall, Eye-Witness Identification in Criminal Cases 5–25 (1965), and proof that consists only of such identifications may well result in the conviction of an innocent person or in allowing a person who has committed a crime to go free. Where the only question is the identity of a perpetrator of a known crime—and especially where, as here, the robber in question wore a mask—there can be little doubt that the testimony of an accomplice to the crime will not only be among the most persuasive evidence possible but also be among the most reliable.

Moreover, we note that if the government had been compelled to proceed with trial as scheduled on December 28 without the testimony of Perry, Miranda, and Santiago, Marrero might well have been acquitted,[8] for the proof then available to the government was substantially weaker than what it was eventually able to produce. Having reasonably relied, before December 24, on the availability of the qualitatively superior accomplice testimony, the government had lined up only one Citibank eyewitness and two Knickerbocker eyewitnesses for trial; of these witnesses, only Dwyer of Citibank was able to identify Marrero at the trial. It was only after the accomplices' refusals that photographic spreads were

even shown to Vasquez and Golden, who also turned out to be able to identify Marrero at trial. Had the continuance not been granted, the government's case would likely have lacked most of its most persuasive evidence and Marrero might well have been acquitted. Considering that the accomplices had not recanted their accusations of Marrero but simply refused to repeat them under oath, the court was given every reason to believe that an acquittal of Marrero would be a miscarriage of justice.

In all the circumstances, therefore, we conclude that the district court did not abuse its discretion in ruling that the accomplices were essential witnesses.

Marrero also argues, in a half-hearted fashion, that the court erred in ruling that the accomplices, after they refused to testify, were "unavailable" within the meaning of § 3161(h)(3), contending that "the legislators most probably did not intend to have trials delayed on the mere hope that hostile witnesses might decide to cooperate." (Brief on appeal at 14.) The legislative history strongly suggests, however, that the legislators did have situations such as the present one in mind. In the original Speedy Trial Act bill, S. 754, the forerunner of § 3161(h)(3) did not mention witnesses at all. In testimony before the Subcommittee on Constitutional Rights of the Senate Judiciary Committee, a representative of the Department of Justice listed as one flaw in S. 754 the fact that

> [i]f after the arrest of the defendant an essential witness refuses to testify before the grand jury and is committed for contempt, the actual court time may be excluded from the time period, but the delay caused by the witness's recalcitrance

---

years, testified extensively to the activities of the coconspirators. (*See* United States' brief on appeal in *United States v. Didier, supra.*) In the present case, had only Miranda refused to testify and Perry and Santiago continued to indicate their willingness to testify, it appears that the district court, properly, would not have granted a continuance, because the testimony of Miranda would have been cumulative.

8. Marrero himself gave implicit recognition to the essential roles of the accomplice witnesses. On the next business day after the accomplices' in-court representations that they would refuse to testify, Marrero's counsel moved for a reduction of Marrero's bail, specifically pointing out that the government's case was suddenly much weaker, thus increasing the likelihood that Marrero would willingly return for his trial. (Dec. 28, 1981 Tr. at 3–5.)

would not be excluded. Assuming the witness is not released on bail and is willing to stay in jail for 60 days, his recalcitrance would result in dismissal of the charges against the defendant. Such a result is likely to occur in organized crime cases.

Hearing Before the Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary, 93d Cong., 1st Sess. 115 (1973). Thereafter, the appropriate section of the bill was amended, yielding the present language of § 3161(h)(3), and the Senate Judiciary Committee Report on the amended version stated that "[t]he necessity of including essential witnesses in this exclusion was pointed out by testimony of the Justice Department before the Subcommittee on Constitutional Rights." S.Rep. No. 1021, *supra,* at 37. Thus the Report, read in conjunction with the hearings to which it referred, indicates that the legislators intended recalcitrant witnesses to be among those who could be deemed "unavailable."

In sum, the district court did not err in ruling that the accomplices were unavailable, and it did not abuse its discretion in concluding that they were essential witnesses or in granting a two-month continuance until a time when they were more likely to end their contumacious refusals to testify.

The judgment of conviction is affirmed.