UNITED STATES of America, Appellee,

v.

**Rodell EAGLE HAWK, a/k/a Rydell Eagle Hawk, Appellant.**

No. 86–5204.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1986.

Decided April 8, 1987.

Rehearing Denied May 6, 1987.

Bright, Senior Circuit Judge, filed a dissenting opinion.

Terry Hofer, Rapid City, S.D., for appellant.

Ted L. McBride, Asst. U.S. Atty., Rapid City, S.D., for appellee.

Before BOWMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and CONMY,* District Judge.

CONMY, District Judge.

Rodell Eagle Hawk appeals his conviction of second degree murder. He alleges the following errors on appeal:

1. the trial court erred in refusing to give a lesser-included offense instruction on voluntary manslaughter;

2. the trial court erred in giving an aiding and abetting instruction;

3. the trial court erred in denying Leola Hall One Feather immunity, and in refusing her testimony via a third person;

4. the trial court erred in denying appellant's motion to dismiss the indictment for violation of the speedy trial act; and

5. the trial court erred in its voir dire and jury instruction treatment of the government's immunized witness.

We affirm the conviction.

### Lesser-Included Offense Instruction

Appellant was indicted for first degree (felony) murder on the Pine Ridge Indian Reservation in South Dakota. 18 U.S.C. §§ 1111, 1153. The government's primary witness against appellant, Pernell Crow, was also indicted for the same offense, but was later granted immunity in exchange for his testimony against appellant.

The testimony before the district court indicated that appellant, Pernell Crow, Jamie Yellow Horse, Dorothy Rowland, and Bernadine Rowland spent most of July 9, 1984, drinking beer at East Dam on the Pine Ridge Indian Reservation. Their drinking was apparently only interrupted by trips to White Clay, Nebraska, for more beer.

* The Honorable Patrick A. Conmy, Chief Judge, United States District Court for the District Court of North Dakota, sitting by designation.

On the second trip to White Clay, the party met two white men: Frank Lane and Cliff Cavanaugh. Lane and Cavanaugh were attempting to sell a vehicle allegedly in order to obtain bond money for a friend. Lane and Cavanaugh joined the group, returning with them to East Dam. During the third trip to White Clay, Lane and Cavanaugh argued over whether they should continue drinking with appellant's party, or get busy and sell the vehicle. Cavanaugh left the party at White Clay; Lane remained.

After leaving White Clay, the party went to Bernadine Rowland's house outside of Wounded Knee, South Dakota, then to Dorothy Rowland's house, then to a bootlegger's for more liquor.

Crow testified that after they left the bootlegger's, they somehow ended up on White Horse Creek Road near Manderson, South Dakota, that they stopped, and that appellant, he and Lane sat on the tailgate and drank beer. Crow testified that he was very drunk, and that he had passed out several times by this point. Nevertheless, he remembers that Lane began to provoke him by calling him a "little boy" and by pushing him. Crow testified that when Lane pushed him a second time, he retaliated by kicking and hitting Lane in the chest and face area. Lane fell to his hands and knees in a ditch. Crow testified that appellant then walked around the pickup, over to Lane, and began kicking him in the head. Appellant did not speak to Crow or Lane before assaulting Lane.

Crow testified that he and appellant then loaded Lane, who was breathing "funny," into the pickup and drove to the main road that leads north out of Manderson. Appellant parked the pickup and he and Crow got out. Appellant then pulled Lane to the bottom of a deep, steep ditch. Crow testified that appellant climbed out of the ditch and got something out of the back of the truck. Crow followed appellant back down into the ditch and watched while appellant struck Lane several times on the head with a heavy object. Crow testified that Lane made a noise the first time appellant struck him, but did not make any noise thereafter.

When appellant had finished, he handed the object to Crow and told Crow to strike Lane. Crow then discovered that the object was a posthole digger. He struck Lane as appellant directed.

The pathologist testified that the cause of death was extensive head injuries consistent with having been struck with a blunt, heavy object. Transcript at 43.

Appellant argues that if the jury rejected his assertion that someone else killed Lane, they could reasonably have concluded that appellant killed Lane by kicking him in the heat of passion. Accordingly, appellant argues, it was error for the district court to deny a lesser-included offense instruction on voluntary manslaughter.

A court should give a lesser-included offense instruction if: (1) a proper request is made; (2) the elements of the lesser offense are identical to some of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) proof on the element or elements differentiating the two crimes is sufficiently in dispute so the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense; and (5) there is mutuality (a charge may be demanded by either prosecution or defense). *United States v. Neiss*, 684 F.2d 570, 571 (8th Cir.1982). When the evidence taken as a whole does not provide a rational basis for the jury to find the elements necessary to support the lesser-included offense instruction, the trial court may properly exclude such an instruction. *Id.*

The distinguishing element between second degree murder and voluntary manslaughter is intent: second degree murder requires some showing of malice; voluntary manslaughter requires some showing of heat of passion or sudden quarrel. *United States v. Elk*, 658 F.2d 644 (8th Cir. 1981).

"Heat of passion" must be such that " 'at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinary reasonable person to act rash-

ly and without deliberation and reflection, and from such passion, rather than from judgment.'" *Elk,* 658 F.2d at 649 (quoting 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 41.14 (1977)). *And see United States v. Collins,* 690 F.2d 431, 437 (5th Cir.1982) (provocation must be such as would arouse reasonable and ordinary person to kill someone)*, cert. denied,* 460 U.S. 1046, 103 S.Ct. 1447, 75 L.Ed.2d 801 (1983).

■ This court has reviewed the record in this case, and finds no evidence that could reasonably have led the jury to believe that appellant acted in the heat of passion. Even if the jury concluded that Lane was killed when appellant kicked him, there is no evidence in the record that appellant was provoked by Lane, or that appellant acted out of rage or passion. The district court did not err in refusing to give a lesser-included offense instruction on voluntary manslaughter.

### Aiding and Abetting Instruction

■ Appellant argues that it was improper to give the aiding and abetting instruction because all of the government's evidence went to proving that appellant murdered Lane. Since the government presented no evidence indicating that appellant aided and abetted Crow in murdering Lane, the evidence was insufficient to support a finding on aiding and abetting, and it was error to give an instruction on that theory.

Appellee United States argues that the aiding and abetting instruction was given "to avoid confusing the jury about the effect any assistance Crow might have given Eagle Hawk would have had on the issue of Eagle Hawk's guilt." If the jury had chosen to believe that Lane was not dead until after Crow hit him with the post-hole digger, then the jury would have been entitled to conclude that appellant merely aided and abetted Crow.

The district court gave the aiding and abetting instruction approved by this court:

The defendant may also be found guilty of the crime of murder in the first degree or the lesser included offense of second degree murder even though he did not personally commit every act involved in the crime, if he aided and abetted the commission of the crime. Aiding and abetting the commission of a crime has four essential elements, which are:

*One,* that the crime was committed by some person or persons;

*Two,* that the defendant knew such crime was being committed or was going to be committed;

*Three,* that before such crime was completed, the defendant acted in some way to aid the commission of such crime; and

*Four,* that in so acting the defendant intended to aid the commission of such crime.

To convict the defendant of a crime of murder in the first degree or the lesser included crime of second degree murder, the Government must prove beyond a reasonable doubt either (a) each of the essential elements of the crime charged or any lesser included crime, or (b) each of the essential elements of aiding and abetting the crime found to have been committed. If the Government has done soe, you must find the defendant guilty of the crime. On the other hand, if the Government has failed to prove beyond a reasonable doubt, either (a) each of the essential elements of the crime, or (b) each of the essential elements of aiding and abetting that crime, you must find the defendant not guilty of the crime.

*Cf.* Model Criminal Jury Instructions for the Eighth Circuit par. 8.03 (1986).

None of the parties has supplied the court with a copy of the jury verdict form used in this case, and the court is unable to determine whether the jury convicted the appellant for the substantive offense, or for aiding and abetting the substantive offense. In any case, this court finds that the evidence was sufficient to permit the jury to convict the appellant under either theory, and that the district court did not err in including this instruction.

### Immunity of Leola Hall One Feather

Appellant argues that the district court erred in refusing to request the U.S. Attor-

ney to grant Ms. One Feather immunity, or in permitting appellant's counsel to testify as to Ms. One Feather's previous statements.

On the last day of trial, defense counsel moved for a continuance to permit them to present additional testimony in appellant's defense. Defense counsel stated that they had just learned that Leola One Feather had told appellant's sister that she had found Lane's wallet and business card in her basement, where Pernell Crow had been living, shortly after Lane was killed. Since the government's theory was that appellant killed Lane while perpetrating a robbery, defense counsel determined that this evidence would tend to make the jury believe that Crow had robbed Lane, and would also tend to discredit Crow's testimony inculpating appellant.

The district court gave counsel a continuance until the following morning, when they were to present an in chambers offer of proof regarding Ms. One Feather's testimony.

The next morning, the court pointed out to Ms. One Feather that she had previously given a statement to government officials in which she had not mentioned the wallet or business card, and that if she now testified to those facts, she could be prosecuted for perjury. The court also informed Ms. One Feather of her right not to testify, her right to assistance of counsel, and her right to have counsel present. The court then offered to appoint counsel for Ms. One Feather. Ms. One Feather accepted the court's offer.

After consulting with counsel, Ms. One Feather decided not to testify. The government indicated that it would not grant her immunity; the district court declined to request that the government immunize Ms. One Feather. At that point, defense counsel examined co-counsel regarding his recent interview with Ms. One Feather and her statements during that interview.

The district court ultimately declined to permit defense counsel to examine co-counsel in the presence of the jury.

A district court cannot compel the government to apply for immunity. *United States v. Graham*, 548 F.2d 1302, 1315 (8th Cir.1977). This court has previously indicated its doubt that district court can grant judicial immunity. Even if the district court could grant judicial immunity, it should only do so where the evidence is *clearly exculpatory. United States v. Hardrich*, 707 F.2d 992 (8th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). This power is to be sparingly exercised. *Stewart v. Amaral*, 626 F.Supp. 192 (D.Mass.1985).

Ms. One Feather's testimony might have cast some doubt as to Crow's credibility, but it was not clearly exculpatory of the appellant. The district court did not err in refusing to grant judicial immunity, or in declining to request that the government apply for immunity.

Nor did the district court err in refusing to permit co-counsel to testify regarding Ms. One Feather's out-of-court declarations. As we stated in *Hardrich*, Rule 804(b)(3), Federal Rules of Evidence, requires that such testimony be corroborated by circumstances clearly indicating its trustworthiness in order to be admissible. 707 F.2d at 994.

*Speedy Trial Act*

Appellant argues that the trial court erred in denying appellant's motion to dismiss for violation of the Speedy Trial Act, 18 U.S.C. § 3161. Appellant asserts that the trial court erroneously granted two continuances, and that the delay resulting from those continuances are therefore includible in computing speedy trial time.

On November 20, 1985, the government filed the indictments against appellant and Crow. On November 26, 1985, the appellant made his first appearance.

On January 9, 1986, the government moved for a continuance based on the unavailability of an essential witness. 18 U.S.C. § 3161(h)(3). The government asserted that Crow's testimony was essential, and that he was unavailable since the government could not make him testify pri-

or to his own trial. The district court granted the continuance on January 24, 1986.

On February 26, 1986, the government moved to join the trials of Crow and appellant, asserting that it would not introduce Crow's prior statements to federal officials if Crow did not take the stand. Appellant argues that the implication of this motion was that Crow's testimony was never really essential, as appellant and the trial court were led to believe.

The government argues that Crow's testimony was "essential," and points out that a witness can be deemed essential even though the government could obtain a conviction without his testimony. *United States v. Tedesco,* 726 F.2d 1216, 1222 (7th Cir.1984).

The Speedy Trial Act does not define "essential witness." The Senate Judiciary Committee report accompanying the bill that became the Speedy Trial Act defined "essential witness" as "a witness so essential to the proceeding that continuation without the witness would either be impossible or would likely result in a miscarriage of justice." S.Rep. No. 1021, 93rd Cong., 2d Sess. 37 (1984), U.S.Code Cong. & Admin.News 1974, p. 7401.

In *United States v. Marrero,* 705 F.2d 652 (2d Cir.1983), the government had planned to use the testimony of appellant's accomplices to convict appellant of four bank robberies; shortly before the trial date, the accomplices informed the government that they would not testify, even under grants of immunity. The government then moved to continue trial until after the last accomplice had been sentenced; the court determined that the accomplices were "essential witnesses," and granted the continuance. The appellant alleged that the trial court erred in granting a continuance and excluding the period of delay. Appellant argued that the government did not use the accomplices' testimony to convict him, and that they were therefore not "essential witnesses."

The Court of Appeals for the Second Circuit disagreed. Appellant's accomplices were the only witnesses that could testify as to appellant's participation in two robberies; the government had only the testimony of eye-witnesses as to the other two robberies. The court concluded that not granting the continuance would result in a miscarriage of justice where the accomplices were the only reliable witnesses; where the accomplices had clearly implicated the appellant, but now refused to testify; and where the government had reasonably relied on their testimony, and was left inadequately prepared by their sudden refusal to testify. 705 F.2d at 656–57.

■ This court does not believe that section 3161(h)(3)(A) of the Speedy Trial Act requires that the government decide conclusively in advance of trial whether they intend to use a particular witness's testimony or not. Where a witness is unquestionably important, and the government has a good faith belief that it will use that witness's testimony at trial, that witness may be deemed "essential" for purposes of the Speedy Trial Act. If, however, the witness's anticipated testimony will be merely cumulative, or substantially irrelevant, that witness should be deemed non-essential.

■ In this case, only Crow had any recollection, albeit sketchy and not particularly trustworthy, of the circumstances surrounding Lane's death. While the government may have proceeded without that testimony, it is unlikely that they would have obtained a conviction. The district court was justified, at that point, in concluding that Crow was an "essential witness."

Appellant also challenges the government's assertion that Crow was "unavailable." Section 3161(h)(3)(B) defines unavailability:

> For purposes of subparagraph (A) of this paragraph, . . . a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

18 U.S.C. § 3161(h)(3)(B). Appellant argues that Crow was not unavailable, since

he had already given government agents two statements.

The government argues that at the time that Crow made those statements he was not under indictment; once he was indicted, he became "unavailable" for all practical purposes. *United States v. Dichne,* 612 F.2d 632 (2d Cir.1979) (key witness who refused to testify after indictment was "unavailable"), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980).

■ Neither party indicates whether Crow refused to testify after indictment. This court finds, however, that once a witness is under indictment for the same offense as that to which he is requested to testify, fifth amendment safeguards render this witness unavailable for purposes of the Speedy Trial Act.

This court finds that the district court did not err in granting the government's motion for a continuance because of the unavailability of an essential witness.

*Voir Dire and Jury Instruction*

■ Finally, appellant argues that the district court's voir dire and jury instruction regarding immunization elevated Crow's testimony, lending it more credibility; that it confused the jury; and that it made the jury believe that the government was forced to give Crow immunity.

District courts have broad discretion in determining how best to conduct voir dire. In considering appellant's challenge, the central inquiry is whether the overall jury examination, coupled with the jury charge, adequately protects the defendant from prejudice. *United States v. Spaar,* 748 F.2d 1249, 1253 (8th Cir.1984) (court's refusal to ask requested voir dire questions not generally erroneous). A reading of the transcript reveals that the court's statements were completely impartial, and were not prejudicial to the appellant.[1]

1. The voir dire challenge arose out of the following exchange:

MR. RASMUSSEN [Assistant U.S. Attorney]: (CONTINUING) IT WILL BE SHOWN IN THIS CASE THAT ORIGINALLY THERE WERE TWO MEN CHARGED WITH THIS CRIME. THE OTHER ONE'S NAME IS PERNELL CROW.

PERNELL CROW WILL TESTIFY AND WILL TESTIFY HE HAS BEEN GIVEN IMMUNITY FROM PROSECUTION. THE CHARGE AGAINST HIM HAS BEEN DISMISSED. HE WILL TESTIFY IN THIS CASE.

BASICALLY WHAT HAS HAPPENED, HE HAS BEEN TOLD IF YOU COOPERATE WITH THE GOVERNMENT YOU WILL— THE CHARGE WILL BE DISMISSED, IF YOU TESTIFY TRUTHFULLY, NO CHARGES WILL BE BROUGHT AGAINST YOU AS A RESULT OF YOUR TESTIFYING. THAT'S THE IMMUNITY AGREEMENT.

ANYBODY HAVE A PROBLEM WITH THAT?

MA'AM?

PROSPECTIVE JUROR DEYO: I SURE DO.

MR. RASMUSSEN: MAY SHE BE EXCUSED, YOUR HONOR?

THE COURT: THE JURORS SHOULD BE ADVISED THAT THE MATTER OF THE GRANT OF IMMUNITY IS A RECOGNIZED PROCEDURE IN OUR COURT SYSTEM AND THE COURT WILL SO INSTRUCT THAT THIS JURY HAS THE RIGHT TO CONSIDER THE TESTIMONY OF ALL WITNESSES AND MAKE THEIR OWN JUDGMENT BASED UPON ALL OF THE TESTIMONY, INCLUDING THE GRANT OF IMMUNITY.

THE QUESTION I THINK MORE APPROPRIATELY IS, WILL THE FACT THAT A PERSON HAS BEEN GRANTED IMMUNITY PREVENT YOU FROM GIVING TO—FROM CONSIDERING THAT PERSON'S TESTIMONY AS YOU WOULD ANY OTHERPERSON MERELY BECAUSE OF THE GRANT OF IMMUNITY?

PROSPECTIVE JUROR DEYO: I AM AFRAID IT WOULD, SIR.

THE COURT: THERE WAS ANOTHER PERSON?

PROSPECTIVE JUROR MASON: YES.

THE COURT: TELL THE COURT WHAT YOUR POSITION IS ON THAT.

PROSPECTIVE JUROR MASON: I FIGURE IF THE GENTLEMAN DID IT, I DON'T KNOW IF HE SHOULD GET OUT OF IT BECAUSE HE AGREES TO SPEAK UP—

THE COURT: ALL RIGHT. BUT THE QUESTION IS—

PROSPECTIVE JUROR MASON: —AGAINST THE OTHER PERSON.

THE COURT: BUT THE QUESTION IS NOT WHETHER THAT PERSON SHOULD GET OUT, BUT WHETHER OR NOT YOU WOULD CONVICT ANOTHER PERSON IF YOU DID FEEL ANOTHER PERSON COMMITTED THE ACT?

PROSPECTIVE JUROR MASON: NO, I WOULD NOT.

MR. BUTLER [Defense Counsel]: YOUR HONOR, COULD WE APPROACH THE BENCH A MINUTE?

THE COURT: YOU MAY.

(AN OFF–THE–RECORD DISCUSSION WAS HAD AT THE BENCH.)

THE APPELLANT'S CONVICTION IS AFFIRMED.

The district court's jury instruction on Crow's immunity stated:

The law of the United States provides that a United States Attorney may, with the approval of the Attorney General, grant immunity from prosecution to a person in order to obtain the testimony of that person at the trial of a defendant in a criminal case. That has been done in this case. Pernell Crow has received immunity from prosecution in the death of Frank Lane in order to require him to testify against the defendant. Accordingly, you may give his testimony such weight as you think it deserves. Whether or not his testimony may have been influenced by the Government's promise is for you to determine.

Whether or not the Attorney General or his representative the United States Attorney should have granted immunity to Pernell Crow is not for you to decide, and that fact should not influence your decision in this case.

BRIGHT, Senior Circuit Judge, dissenting.

The issue of Eagle Hawk's entitlement to an instruction on manslaughter depends on how much of Pernell Crow's testimony the jury accepted. From the record we only know that Crow testified in an uncertain manner and that his testimony was impeached many times. From Crow's testimony, the jury might have believed that the victim Lane met his death at White Horse Creek Road near Manderson, South Dakota, when the victim Lane initiated a drunken altercation and that his death occurred in that incident, not later.

The jury may have decided that Crow, who participated in the fight, fabricated the story of a killing at a later time to put most of the blame on Eagle Hawk. That scenario would give the jury an opportunity to find that Lane's killing occurred without the necessary malice to support the second degree murder charge either by reason of intoxication or in the heat of passion in a fight between and among Eagle Hawk, the deceased and Crow.

Because from the evidence as a whole, a jury properly instructed might conclude that the government failed to establish the malice necessary to support a conviction for second degree murder, I would reverse the conviction and remand for a new trial.

THE COURT: LADIES AND GENTLEMEN, THE MATTER OF IMMUNITY IS ONLY A PART OF THIS OVER ALL TRIAL. IT IS IMPORTANT FOR THE COURT TO MAKE SURE THAT THE MATTER OF IMMUNITY IS UNDERSTOOD BY MEMBERS OF THE JURY AND THAT YOU MAKE YOUR JUDGMENTS IN ANSWER TO THE QUESTIONS BASED UPON YOUR KNOWLEDGE OF THAT. THE COURT WILL AT A LATER DATE IN THIS TRIAL PROVIDE INSTRUCTIONS ON IMMUNITY AND AT THIS VERY PRELIMINARY STAGE OF THE EXAMINATION OF THE JURY THE ONLY THING THAT THE COURT WANTS TO STRESS IS THAT THE LAWYERS ARE ENTITLED TO KNOW AND THE GOVERNMENT LAWYERS ARE ENTITLED TO KNOW THAT YOU WILL NOT DECIDE THIS CASE BASED UPON THE FACT THAT—AND SAY EVEN THOUGH YOU MAY OTHERWISE NOT SAY SO, THAT THE DEFENDANT IS NOT GUILTY SIMPLY BECAUSE ANOTHER PERSON WENT FREE. AND WITH THAT VERY LIMITED INSTRUCTION OR ADVICE, I AM GOING TO EXCUSE BOTH OF YOU PROSPECTIVE JURORS BECAUSE I FEEL THAT TO DELVE A LITTLE MORE DEEPLY INTO IT MAY SIMPLY CAUSE MORE CONFUSION TO THE OTHER MEMBERS OF THE JURY THAN I WOULD LIKE AT THIS TIME. SO YOU TWO PROSPECTIVE JURORS ARE EXCUSED, WITH THE COURT'S THANKS.