UNITED STATES of America,

v.

Hugo J. CARDUCCI.

Crim. A. No. 82–93.

United States District Court,
W.D. Pennsylvania.

Feb. 24, 1983.

J. Alan Johnson, U.S. Atty., Thomas Corbett, Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

David Rothman, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

Defendant has filed Motions for New Trial and a Motion for a Grant of Immunity. After consideration of facts elicited at hearings conducted by the court and the argument of counsel both in briefs and in oral arguments, we conclude that a new trial is necessary and that immunity must be denied.

## PROCEDURAL HISTORY

Hugo J. Carducci and John Heatherington were indicted in June 1982 for distribution and conspiracy to distribute cocaine. Trial of this matter began August 2, 1982. A mistrial was declared on August 3, 1982 due to the fatal shooting of the co-defendant John Heatherington.

The retrial of Carducci began November 2, 1982, and concluded that same day. A jury verdict of guilty on both counts was returned against Carducci, and sentencing was set for December 2, 1982. In the interim, defendant Carducci discharged his trial attorney and acquired new counsel. Prior to sentencing Carducci's new counsel presented a motion for new trial because of the ineffective assistance of trial counsel. This court heard testimony on defendant's motion on three separate occasions. During this process defendant filed an amended motion for new trial and a motion to accord defendant judicial immunity. The parties have briefed the issues and the court has heard oral argument of counsel.

Defendant's initial motion for new trial alleged that a conflict of interest existed for defendant's trial counsel which affected the presentation of the defense. Defendant's amended motion for new trial alleges additional instances of ineffective assistance necessitating a new trial. Primarily these are allegations of failure to exclude improper evidence, failure to present exculpatory evidence, failure to adequately prepare the defense, failure to explore and recommend a plea bargain and failure to develop the facts as related by the defendant.

Defendant also seeks to assert as a basis for a new trial that on the explicit or tacit direction of trial counsel, defendant testified falsely.

## ANALYSIS

### I.

In considering a post trial motion of this type we employ the standard stated in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). To establish a Sixth Amendment violation necessitating a new trial, the court required defendant to prove "that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. at 1718. Two elements then are necessary, (1) an actual conflict, and (2) an adverse affect. As to actual conflict of interest, the *Cuyler* standard is more stringent than that applied prior to trial. At the earlier stage a potential conflict of interest is sufficient to justify the disqualification of counsel. On post trial motion the conflict of interest must be actual, and not merely potential. We conclude from the facts presented that not one but two actual conflicts exist in the instant case, and that each was an element in trial counsel's decision to exclude certain exculpatory testimony.

The first arises from Carducci's trial counsel's representation of a suspect in Heatherington's murder. Subsequent to the shooting and at a time prior to Carducci's second trial, Carducci's trial counsel undertook the representation of a suspect in Heatherington's murder. Both the murder victim and the suspect were intimately involved with two potential witnesses in Carducci's entrapment defense. Prior to the initial trial Carducci's trial counsel had interviewed two women, clients of Carducci's talent agency, who were witnesses to events supportive of Carducci's entrapment defense. Witness A had been the girl friend of Heatherington, and Witness B dated the murder suspect, trial counsel's new client. Both witnesses were involved with or knowledgeable of the activities of the murder victim and the suspect. Both Witnesses A and B were questioned in the murder investigation and were called before the grand jury. These witnesses would have been corroborative of Carducci's testimony on entrapment which was otherwise largely uncorroborated; specifically Witnesses A and B would describe the repeated requests made by Bernie Duffy to Carducci to contact a source for drugs. At the same time trial counsel also had an interest in preventing any testimony regarding Heatherington's activities or the involvement of his other client, the murder suspect.

The second conflict arises from trial counsel's representation of David Duffy, the brother of the informant who is the subject of the entrapment defense. Carducci's trial counsel had represented David Duffy on various matters for a number of years. Carducci revealed to his trial counsel that shortly prior to the events which he claimed amounted to entrapment, he had acquired narcotics from Heatherington which he supplied to David Duffy. David Duffy had then ingested the drug on the premises of Carducci's business. David Duffy was well acquainted with Carducci's clients and some of the women were apparently present on the occasion of the incident involving David Duffy, although Witnesses A and B were not named. If Carducci is to testify truthfully as to his past history with narcotics, he would necessarily implicate David Duffy in a narcotics violation. Also trial counsel would be wary of placing any of Carducci's clients on the stand for fear that one may implicate David Duffy during cross-examination regarding Carducci's past drug involvement. As David Duffy's attorney, Carducci's trial counsel would, of course, wish to avoid such testimony. The conflict is clear.

Both Witnesses A and B were witnesses to events supportive of the entrapment defense. Trial counsel had interviewed both Witnesses A and B prior to the first trial, and had indicated his intention to use one or both of them at trial. Both witnesses were asked to be available for use at the first trial, but the mistrial occurred before the defense was begun. Subsequent to Heatherington's murder and trial counsel's retention by the murder suspect, trial counsel decided not to call Witness A. Although Witness B arrived at trial during trial counsel's closing, and this may have contributed to his decision, trial counsel chose not to move to reopen his case to put her on, and chose to leave Carducci's testimony largely uncorroborated.

Trial counsel has stated a number of tactical reasons for excluding Witnesses A and B. Witness A had a past history of involvement in drugs and close association with Heatherington. Trial counsel was concerned that her past drug involvement would reflect poorly on the entrapment defense. At Carducci's second trial, his trial counsel concluded that Witness B was not appropriately dressed for an appearance in court, and that her alluring attire would reflect poorly on herself and the defendant. Trial counsel did not consider either Witness A or B to be strong witnesses and believed both to be subject to attack on credibility. Further, trial counsel concluded that because their testimony was merely corroborative of Carducci's testimony, the utility of their testimony did not outweigh the possible drawbacks. Trial counsel believed that Witnesses A's and B's employment as exotic dancers would undermine the picture of Carducci as a booking agent or talent manager which trial counsel was trying to present, rather than a panderer which the evidence would suggest.

The reasons which trial counsel has set forth for his decision not to call Witness A or B are valid concerns. Certainly trial counsel must weigh credibility and the need for a witness' testimony in determining whether to present that witness. We are mindful, however, that we do not here apply a "harmless error" standard. The *Cuyler* decision stresses that the defendant need not demonstrate prejudice, but need only prove that the conflict in some way adversely affected his representation. 446 U.S. at 349–50, 100 S.Ct. at 1718–19. *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). The defendant need only demonstrate that the conflict of interest was one factor in trial counsel's decision. The *Cuyler* decision reaffirmed the holding in *Glasser* that the court need not "indulge in nice calculations as to the amount of prejudice" attributable to the conflict. 446 U.S. at 349, 100 S.Ct. at 1719, quoting *Glasser,* 315 U.S. at 76, 62 S.Ct. at 467. In short we need only find that the conflict of interest was a factor in trial counsel's decision not to call Witnesses A or B, and we need not determine the degree to which that factor contributed. Although trial counsel has testified that these considerations had no effect on his

decision, the existence of these facts was present in his mind, and we cannot escape the conclusion that consciously or unconsciously they affected his decision. The inferences to be drawn from the facts as presented indicate that trial counsel's obligations to other clients and the relationship of those clients to the informant, the murdered co-defendant, and two defense witnesses colored to some degree trial counsel's decisions.

## II.

Defendant seeks a judicially fashioned immunity to permit himself to testify in support of his motion for new trial and to permit him to testify fully and truthfully on retrial. If granted immunity Carducci would testify that he testified falsely at the second trial on the direct or tacit advice of his trial counsel, thereby rendering himself an ineffective witness on his own behalf. Because we grant a new trial to defendant on other grounds the need for testimony from Carducci on this issue in the post trial motion proceeding is obviated. There is, therefore, no need for immunity at this stage.

However, defendant has also requested immunity for his testimony at retrial. If defendant were to testify in his own defense at the retrial, he would directly controvert portions of his testimony in the previous trial.

It is clear that defendant does not seek statutory immunity from the United States Attorney under 18 U.S.C. § 6002, § 6003 which the United States Attorney opposes. Rather, defendant seeks a form of judicial immunity. The government refers to the recent decision in *The Pillsbury Co. v. Conboy*, —— U.S. ——, ——, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983), for the premise that no court has the power to confer immunity outside 18 U.S.C. §§ 6002, 6003. However, those statements are made in the context of a civil case and involve interpretation of 18 U.S.C. § 6002, § 6003.

We recognize that this court has inherent authority to confer judicially-fashioned immunity in certain limited instances.

The need for immunity may be triggered by prosecutorial misconduct or the intentional distortion of the trial process. *United States v. Morrison*, 535 F.2d 223 (3d Cir. 1976). Judicially-fashioned immunity may be required where the assertion of one constitutional right requires the waiver of a defendant's fifth amendment right. *United States v. Inmon*, 568 F.2d 326, 332 (3d Cir. 1977); *In re Grand Jury Investigation*, 587 F.2d 589 (3d Cir.1978); *See also Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Finally the court may employ immunity for defense witnesses to protect defendant's due process right when the defendant is prevented from presenting exculpatory evidence which is crucial to his case. *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980).

Recognizing the power of the court to grant immunity in appropriate circumstances, we consider whether such circumstances exist in the instant case. In *Virgin Islands v. Smith*, 615 F.2d at 972, the Third Circuit identifies five elements which must be present to justify judicial use of the immunity power. We find two of these elements absent.

Immunity is to be employed only where the testimony to be given is clearly exculpatory. The testimony which Carducci now offers is equivocal at best. He would testify on retrial that he had supplied narcotics to David Duffy who had used those narcotics on Carducci's premises. This involvement with drugs prior to the time of the claimed entrapment can only weaken the defendant's entrapment defense.

Further, immunity may not be conferred where a strong governmental interest exists which countervails the grant of immunity. In the instant case the government has an interest in preserving its ability to prosecute the defendant for perjury if indeed he testified falsely at the original trial. A grant of immunity under such circumstances might also encourage future defendants to lie, blame it on counsel in post-trial motions, and get a second bite of the apple on retrial without penalty.

It is also doubtful whether immunity is available in the instant case because immunity is sought for the defendant himself and not a defense witness. The decisions in *Morrison* and *Smith* are directed solely to immunizing defense witnesses other than the defendant. We have not found any decision in our research which accords judicial immunity to a defendant for his testimony at trial, and although the situation existing here is somewhat unusual, we hesitate to extend judicial immunity that far.

For the reasons stated above, defendant's motion for new trial is granted and defendant's motion for judicial immunity is denied.