**UNITED STATES of America**

v.

**Ferris J. ALEXANDER, et al.**

**Crim. No. 4–89–85.**

United States District Court,
D. Minnesota,
Fourth Division.

April 25, 1990.

Jerome Arnold, Paul W. Murphy and Mary E. Carlson, Minneapolis, Minn., for the U.S.

Robert F. Smith, Universal City, Cal., and Deborah Ellis, St. Paul, Minn., for defendant Ferris J. Alexander.

Michael McGlennon, Minneapolis, Minn., for defendant Dolores Alexander.

Joseph Friedberg, Minneapolis, Minn., for defendant Jeffrey Alexander.

Dave G. Roston, Minneapolis, Minn., for defendant Wanda Magnuson.

Randall D.B. Tigue, Minneapolis, Minn., pro se.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court pursuant to defendant Ferris J. Alexander's mid-trial request for a grant of judicial immunity for Randall D.B. Tigue, or, in the alternative, for dismissal of Count I. Defendant seeks to present Tigue as an exculpatory witness. Tigue is also a defendant is this matter, but was severed from the trial of his co-defendants by this Court's order, dated January 24, 1990. For the reasons set forth herein, defendant's motion for judicial immunity, or, in the alternative, dismissal of Count I, is denied.

*Background*

Defendant Ferris J. Alexander, along with co-defendants Dolores Alexander, Jeffrey Alexander, Wanda Magnuson, and Randall D.B. Tigue, was charged in a forty-three count indictment, dated May 30, 1989. In Count I of the indictment Ferris J. Alexander, Dolores Alexander, Wanda Magnuson, and Randall D.B. Tigue are charged with conspiring to defraud the Internal Revenue Service by "impeding, impairing, obstructing, and defeating" its functions in violation of 18 U.S.C. § 371. Defendant Ferris J. Alexander is also charged in Counts II and III with filing tax returns for tax years 1982 and 1983, respectively, which were not true and correct as to every material matter, in violation of 26 U.S.C. § 7206(1).

The charge in Count I rests primarily on allegations of business transactions which were intentionally designed to conceal the amount and disposition of income received by defendants, primarily Ferris J. Alexander and his businesses. The indictment charges that Tigue, as the attorney for Alexander, the businesses, and their employees, participated in this illegal conduct by, among other things, setting up sham corporations, *see* Indictment at 11 and 18, facilitating the use of false names or the names of employees, *see id.* at 12, changing names on documents such as purchase agreements, *see id.* at 21, and misusing an escrow account in his name. *See id.* at 28. It is unquestioned that Tigue was Alexander's attorney for over eighteen years.

In its January 24, 1990, order, this Court affirmed, without discussion, the magistrate's prior order severing Tigue from the present trial. In the pretrial motions, Alexander argued to the magistrate for severance on the basis that his attorney-client privilege would be jeopardized by a joint trial. The magistrate, thereafter, granted severance primarily on this ground advanced by Alexander. Order of September 30, 1989, at 40–41.

Alexander now seeks to introduce the testimony of Tigue as to Tigue's involvement in the questioned business dealings. Defendant contends this testimony will be exculpatory because, on numerous occasions, he relied on Tigue's advice. At a hearing held April 25, 1990, outside the presence of the jury, defendant sought to proffer the testimony Tigue would give through an examination of Tigue on the witness stand. Tigue exercised his fifth amendment privilege against self-incrimination at this proffer. It is clear Tigue will not testify in this trial, absent a guarantee of immunity. Tigue Affidavit at 2.

Alexander has previously sought use immunity for Tigue from the United States Attorney, pursuant to 18 U.S.C. § 6001, *et seq.* Defendant's Exhibit A. The government declined to grant Tigue the requested immunity. Defendant's Exhibit B.

Defendant now asks this Court to invoke its power to grant judicial immunity to Tigue so that this testimony may be presented. He suggests the testimony Tigue would give is clearly exculpatory and is essential to his case. According to defendant, Tigue will testify as to the business reasons for setting up various corporations. In addition, defendant contends that his failing health and memory render the testimony of Tigue the only adequate explanation of the genesis of the business transactions.

In support of his motion, defendant directs the Court to a series of cases arising out of the third circuit. In particular, defendant cites *Government of the Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir. 1980), and *United States v. Carducci,* 557

F.Supp. 531 (W.D.Pa.1983), for the proposition that a court may invoke its inherent powers to grant immunity. In the alternative, defendant moves for a dismissal of Count I, premised on the government's failure to grant Tigue immunity and his claim that this denial violates defendant's sixth amendment right to compel process.

The government objects to Alexander's motion on multiple grounds. The government notes particularly defendant's own arguments regarding the attorney-client privilege made at the pretrial stage. As such, the United States claims that the present state of affairs rests as much on defendant's shoulders as on the government's. The government also suggests its case against Tigue will be tainted by a grant of immunity and suggests that the risk of collusive perjury on the parts of defendant and Tigue is substantial. Finally, the government contends any testimony offered by Tigue will not be exculpatory.

*Analysis*

I. Judicial Immunity

■ The Court begins its analysis of defendant's request by reasserting well established principles of federal immunity law. It is certain that this Court may not grant immunity pursuant to the federal use statute, 18 U.S.C. § 6001, *et seq.* *Pillsbury v. Conboy*, 459 U.S. 248, 261, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983). Nor may the Court order the government to apply for statutory immunity. *United States v. Eagle Hawk*, 815 F.2d 1213, 1217 (8th Cir.1987), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988).

As such, the Court must determine whether it possesses, and then may invoke, its own power to grant immunity absent statutory authority or a request by the government. With the exception of the third circuit, courts which have addressed this issue squarely have concluded emphatically that such an inherent power does not exist. *United States v. Hooks*, 848 F.2d 785, 803 (7th Cir.1988); *United States v. Pennell*, 737 F.2d 521, 527 (6th Cir.), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *United States v. Hunter*, 672 F.2d 815, 818 (10th Cir.1982); *Unit-*

*ed States v. Heldt*, 668 F.2d 1238, 1282 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct.1971, 72 L.Ed.2d 440 (1982); *United States v. Thevis*, 665 F.2d 616, 639–40 (5th Cir.), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); *United States v. Benveniste*, 564 F.2d 335, 339 n. 4 (9th Cir.1977). These courts generally have concluded a grant of judicial immunity would violate established principles of separation of powers by infringing on a power reserved to the executive branch. *Pennell*, 737 F.2d at 527; *United States v. Mendia*, 731 F.2d 1412, 1414 (9th Cir.), *cert. denied*, 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 399 (1984); *United States v. Taylor*, 728 F.2d 930, 934 (7th Cir.1984); *Gottesman*, 724 F.2d at 1517; *Snelling v. United States*, 719 F.2d 1067, 1068 n. 3 (10th Cir.1983); *United States v. Frans*, 697 F.2d 188, 191 (7th Cir.), *cert. denied*, 464 U.S. 828, 104 S.Ct. 104, 78 L.Ed.2d 107 (1983); *Thevis*, 665 F.2d at 639.

This circuit has allied itself with the majority by recognizing that such a power would interfere with a prosecutor's traditional discretion in offering and granting immunity. *See Appeal of Starkey*, 600 F.2d 1043, 1047 (8th Cir.1979). Although the eighth circuit has never held specifically that a district court is without the power to grant immunity, that court has expressed grave doubt that such a power exists. *United States v. Capozzi*, 883 F.2d 608, 613–14 (8th Cir.1989); *Eagle Hawk*, 815 F.2d at 1217. In this respect, the court of appeals has specifically declined to embrace the rules set forth by the third circuit in *Government of the Virgin Islands v. Smith* and *United States v. Carducci. Capozzi*, 883 F.2d at 613–14. Rather, the eighth circuit has concluded that if a district court has the inherent power to grant immunity, that power is an "extraordinary remedy," *id.* at 612, which "must be used sparingly ... where [the] evidence is *clearly exculpatory.*" *Eagle Hawk*, 815 F.2d at 1217 (emphasis original). In conjunction with these considerations, the district court must consider whether a denial of immunity will jeopardize a defendant's guarantee of a fair trial. *Capozzi*, 883 F.2d at 614.

Given the eighth circuit's considerable reluctance to recognize a power to grant immunity, an order granting such immunity to Tigue may well be without foundation. Yet, this Court is convinced that even if it possessed the power to grant immunity to Tigue, this case does not mandate invocation of that "extraordinary remedy." *Capozzi*, 883 F.2d at 612. The circumstances at this juncture are neither "extraordinary," nor is the proffered testimony of Tigue "clearly exculpatory." The Court, moreover, is confident a denial of defendant's motion will not prevent a fair trial.

At the time of this motion, the trial is in its third month. The defense case, thus far, has consumed almost three full weeks. Alexander testified for six days, five of which were cross-examination. The evidence to this point indicates this matter is far from the "extraordinary" standard posited by the court of appeals. The testimony indicates that much of Tigue's testimony will be cumulative.

Defendant's employees, including Benedict Jochim, In Sook Na, and LeRoy Wendling, have testified that on numerous occasions Tigue advised them to sign documents and testify in a particular manner before various licensing boards or commissions. In particular, the witnesses related instances in which Tigue solicited their signatures on articles of incorporation for the allegedly sham companies.

More significantly, defendant has testified at length, both on direct and cross-examination, that Tigue was primarily responsible for the creation of these corporations and business transactions. Defendant has insisted on numerous occasions that he was told by Tigue to undertake a particular course of action. Defendant has also suggested that many of the questioned transactions were undertaken, without his knowledge, by Tigue acting alone.

Having heard this extensive evidence regarding Tigue's alleged activities, the Court concludes that much of Tigue's testimony regarding his advice to defendant, and defendant's reliance upon that advice, is already before the jury. In this regard,

Tigue's proposed testimony will offer nothing new in the way of proof. This testimony is by no means imperative.

Defendant's pretrial invocation of the attorney-client privilege further undermines his suggestion that this situation is "extraordinary." Although the Court recognizes defendant's right to maintain and even change his various theories of defense, Alexander's invocation of the attorney-client privilege in support of severance has, to a certain degree, placed him in the predicament in which he now finds himself. As such, his claim that these circumstances are "extraordinary" is somewhat disingenuous. Defendant chose to use the privilege as a shield at the pretrial stage. Having done so, it would be improvident to allow him to use it as a sword at this time.

Defendant has also failed to demonstrate that Tigue's testimony will be "clearly exculpatory." As an initial matter, it is unclear as to what matters Tigue will offer testimony regarding beyond those described above. If his testimony is truly cumulative, then the exculpatory evidence is already with the jury. At the oral hearing of April 25, 1990, Tigue declined to answer any questions by invoking his fifth amendment right. The only supporting documentation submitted by Alexander to sustain his burden of showing that Tigue's testimony will be "clearly exculpatory" is the affidavit of Randall D.B. Tigue. The Court has reviewed this affidavit, dated April 10, 1990. The affidavit wholly fails to illustrate that Tigue's testimony will "exonerate" defendant to the extent necessary to mandate admission of Tigue's testimony. *United States v. Hardrich*, 707 F.2d 992, 994 (8th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). The mere fact that Tigue's testimony will "cast doubt" upon defendant's guilt is insufficient to justify immunity. *Eagle Hawk*, 815 F.2d at 1217.

With respect to this Court's deep concern for each defendant's fair trial, the Court notes that the defendants have called at least a dozen witnesses to this date. While some of these witnesses have not been permitted to testify—particularly certain

experts whose opinions, the Court ruled after extensive voir dire, were cumulative—the record will reflect this Court's grant of considerable latitude to defendant to conduct his defense. This Court's previous ruling regarding the admission of substantial testimony regarding Tigue's involvement and advice undercuts any claim of unfairness based on the absence of Tigue's personal testimony.

Defendant's argument regarding the necessity of Tigue's testimony to supplement Alexander's testimony is also unsupported by the record. With respect to the defendant's assertion of his own mental disability, the Court notes that Alexander's own psychiatric physician has made clear that any purported disability from which he suffers does not impair his ability to assist in his own defense.[1] Defendant has been able to describe cogently the workings of his businesses and, to a great extent, Tigue's involvement in those businesses. When defendant believes he was advised by Tigue, he has said so. When defendant believes Tigue took an action without his knowledge, this fact has also been made clear.

Having considered the factors discussed above, the Court declines to grant immunity to Randall D.B. Tigue absent a motion by the government.

## II. Sixth Amendment

■ In the absence of a grant of judicial immunity, defendant asks the Court to dismiss Count I. Defendant argues the refusal by the government to offer statutory immunity prevents him from introducing exculpatory evidence in violation of the compulsory process clause of the sixth amendment. Defendant's argument is premised upon Tigue's invocation of his fifth amendment privilege against self-incrimination if called to testify without immunity.

The sixth amendment guarantee of compulsory process gives a defendant the right to call any witness capable of testifying and whose testimony would be relevant and material to the case. *Washington v. Texas,* 388 U.S. 14, 18, 87 S.Ct.1920, 1923, 18 L.Ed.2d 1019 (1967). This right, of course, is not without limitation. The sixth amendment right to compulsory process to secure the attendance of a witness does not include the right to compel a witness to waive his fifth amendment privilege against self-incrimination. *United States v. Paris,* 827 F.2d 395, 399 (9th Cir.1987). Nor may a defendant compel the government to grant immunity to a defense witness to insure testimony which might otherwise be unobtainable. *Id.; United States v. Wilson,* 715 F.2d 1164, 1173 (7th Cir.), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *United States v. Turkish,* 623 F.2d 769, 777 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *United States v. Klauber,* 611 F.2d 512, 519 (4th Cir.), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980); *United States v. Trejo–Zambrano,* 582 F.2d 460, 464 (9th Cir.), *cert. denied* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978). A court's refusal to order the government to grant immunity is similarly not a violation of a defendant's sixth amendment guarantee. *See Doddington,* 822 F.2d at 818.

In this case, Tigue is not simply a witness. He is a defendant facing the same charge. To compel his testimony would

---

1. The Court has no hesitation in adding its own observation in this regard. Ferris J. Alexander is 72 years old. He has had at least one cardiac episode during the course of this proceeding. The Court has directed that he maintain, in court, trained cardiac emergency technicians who are appropriately equipped. He has undergone six days of examination, to this date, and his heart function has been regularly monitored. The results have shown no obvious distress or impairment of function.

   In this same regard, the Court unhesitatingly notes that Alexander has shown himself to be fully-competent as a witness. He has, understandably, occasionally misstated the date of one or another transaction when he has recited his almost forty years in business. He has demonstrated an acute recall of his financial transactions, amounts, participants, and details. He has shown an ability to anticipate lines of inquiry on cross-examination, and has shown a perceptive sense of humor. This Court finds that he is both physically and mentally competent to conduct his defense.

928

entail an unacceptance risk of taint to his own prosecution. It is inconceivable to this Court that, subsequent to any such testimony, there would not be substantial objection to the government's further proceedings against Tigue.

Defendant certainly is entitled to exercise his sixth amendment guarantee to compel appearances of witnesses. The law is clear, however, that this right is subject to the fifth amendment rights held by witnesses who wish to avoid self-incrimination. Defendant seeks to have the Court dismiss a charge in the indictment in place of immunity for Tigue. Defendant's sixth amendment assurances simply do not go this far.

Accordingly, for the reasons set forth above, and based upon the files, records, and proceedings herein, IT IS ORDERED that:

Defendant Ferris J. Alexander's motion for a grant of judicial immunity for Randall D.B. Tigue, or, in the alternative, for a dismissal of Count I, is denied.