# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1997

_____

United States of America,                    *
                                             *
        Plaintiff - Appellee,           *
                                             *   Appeal from the United States
v.                                           *   District Court for the
                                             *   Eastern District of Arkansas.
Jackie E. Porchay,                           *
                                             *
        Defendant - Appellant.          *

_____

Submitted: January 12, 2011
Filed: August 29, 2011

_____

Before MURPHY, BYE, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

      This case has a long history. Jackie E. Porchay was indicted in October 2007 for conspiracy to possess with intent to distribute cocaine, conspiring to conduct a financial transaction involving illegal proceeds, and six counts of money laundering. After two mistrials, a jury convicted Porchay of seven of the eight counts in December 2009. The district court[1] sentenced Porchay to concurrent 150 month sentences on each count. Porchay appeals the denial of her motions to dismiss, to suppress, for a mistrial, and for a bond pending appeal, alleging violations of the

_____

[1] The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

Fourth and Sixth Amendments, the Speedy Trial Act, and Franks v. Delaware, 438 U.S. 154 (1978). After a thorough review of the record and applicable law, we affirm.

## I.

In February 2006 an officer with the Texas Department of Public Safety stopped a white Chevrolet Monte Carlo for speeding. He learned that Harold Kelley was the driver, then checked the registration of the vehicle and discovered that the car was registered to Porchay at 10005 Bradley Drive in Little Rock, Arkansas. A subsequent search of the vehicle revealed $1,700 in cash on Kelley, cocaine powder and a crack pipe in the purse of a passenger named Theresa Speed, $2,600 in the center console, and over $200,000 in the trunk.

After Kelley and Speed were arrested, Kelley agreed to cooperate. He confessed that he had been transporting the money to Dallas to pay $158,000 towards the purchase of 20 kilograms of cocaine. The remainder of the money found in the car, $51,000, was intended for a coconspirator named Frederick Coleman to settle a previous drug transaction. Kelley agreed to lure Coleman to a motel parking lot in a sting operation where federal agents arrested him. Federal agents then executed a search of Coleman's home in Benton, Arkansas and found financial records documenting a number of drug transactions.

In March, FBI agent James Woodie interviewed Coleman regarding the drug distribution scheme. Coleman explained that the Monte Carlo registered in Porchay's name had been modified to contain compartments to conceal drugs. At Kelley's suggestion, Coleman fortified his Benton home with steel security bars and doors. Coleman also told Woodie that Porchay and Kelley lived together at the Bradley Drive address in Little Rock, and that Kelley carried firearms on his person and kept them at the Bradley Drive location.

Woodie then attempted to confirm this information. Public records searches revealed that Porchay had recently purchased a $118,000 home in Benton with metal bars on the inside of the windows. A search of the Pulaski County Assessor's database showed that Porchay also owned four vehicles, including the Monte Carlo in which Kelley and Speed were stopped. The address on each of their registrations was Porchay's home on Bradley Drive. Despite these significant expenditures, Arkansas income tax records showed that Porchay had not filed tax returns in 2005 and had only declared income of roughly $13,000 per year for 2003 and 2004. Based on this information and the statements that Coleman provided, Woodie prepared an affidavit supporting a search warrant for the Little Rock house. A magistrate judge authorized the search, which yielded over $190,000 in cash and some small caliber hand guns licensed to Porchay. Police also seized money counting machines and two vehicles.

The government indicted Porchay in August 2006 on charges of conspiring to possess with intent to distribute cocaine, conspiring to conduct a financial transaction involving illegal proceeds, and numerous counts of money laundering. After the indictment was dismissed due to a misnomer, Porchay was charged in a second superseding indictment. When the government decided to indict an additional codefendant, Yolanda Summons, it filed a third superseding indictment. Porchay was later indicted a fourth time in October 2007 along with a new codefendant, Michelle McBride.

Porchay's first trial began in November 2008. The jury could not reach a unanimous verdict on seven counts of the indictment charging her with drug and money laundering offenses. It acquitted her on one count of illegal use of drug proceeds. The district court declared a mistrial on December 1 and scheduled a second trial on the remaining charges for December 9, just over one week later.

The government moved for a continuance on December 3, 2008 in part because it would be "physically impossible" to produce some witnesses held by the Bureau

of Prisons by December 9.  It explained that because the witnesses were incarcerated, the United States Marshal required three weeks notice to produce them and it "would plainly be impossible to provide such notice given the current trial date."

On December 8 the district court granted the government's motion to continue the December 9 trial date on the ground that "essential witnesses, who are incarcerated in the Bureau of Prisons, cannot be made available by the trial date because the U.S. Marshal requires three weeks to produce incarcerated witnesses." The court granted the motion "[f]or good cause shown," and found that "[a]ny delay commencing the trial of this case occasioned by this continuance will be excludable under the provisions of the Speedy Trial Act, as provided by 18 U.S.C. § 3161(h)(3)(A)."  The court also ordered the trial to begin on May 12, 2009.

After waiting more than seventy days, Porchay moved on April 26, 2009 to dismiss the indictment for lack of a speedy trial.  She argued that the government had "failed to identify any essential witness" and that the court had "failed to make a factual determination of whether any witness was essential over Porchay's objections, [so] this case must be dismissed."  On April 30 the government filed its opposition to Porchay's motion to dismiss, stating that its December continuance motion had been grounded on the "unavailability of witnesses, including two witnesses, Fred Coleman and Dondrick James, who were housed at FCI Forrest City, Arkansas," and that Coleman and James were both essential witnesses because their testimony was "material" to the prosecution's case.  It added that the district court had been well "aware of the policy of the United States Marshal requiring three weeks advance notice to transport incarcerated witnesses for trial" because it had granted writs to produce those witnesses for Porchay's first trial.

The district court denied Porchay's motion to dismiss on May 4, 2009.  Its order stated that it had "already ruled on this issue [excludable time due to the unavailability of an essential witness] when [it] granted the Prosecution's Amended

Motion to Continue Trial Date" on December 8, 2008. Trial began on May 12, 2009 as scheduled, but two days into it the court granted another mistrial because the government had failed to disclose impeachment information about two witnesses. It set the date for a new trial to start the next week in May, but Porchay's counsel moved for a continuance because of other professional and personal conflicts at the time.

Porchay's third trial began on December 10, 2009 and ended with the jury convicting her of the remaining seven counts of the indictment. The district court sentenced Porchay to 150 months in prison. It is from this final judgment that Porchay now appeals. First, she alleges that the district court erred in denying her motion to dismiss for violations of the Speedy Trial Act and the Sixth Amendment. Second, she argues that the court erred in denying her motion to suppress evidence seized in a search of the Bradley Drive home because the affidavit supporting the search warrant contained material misstatements in violation of Franks v. Delaware, 438 U.S. 154 (1978). Third, she argues that the court abused its discretion in denying her motion to dismiss after the government allegedly committed Brady violations. Fourth, she argues that the court abused its discretion at trial by denying her motion for a mistrial when her former codefendant Kelley invoked the Fifth Amendment in the presence of the jury. Finally, she argues that the court clearly erred in denying her motion for bond pending appeal.

II.

Porchay first contends that the district court erred in denying her motion to dismiss because the government violated her rights under the Speedy Trial Act and the Sixth Amendment. In the context of Speedy Trial Act rulings, we review a district court's legal conclusions de novo, its factual findings for clear error, and its ultimate determination for an abuse of discretion. United States v. Lucas, 499 F.3d 769, 782 (8th Cir. 2007) (en banc), cert. denied, 552 U.S. 1281 (2008).

Under the Speedy Trial Act, a defendant must be brought to trial within seventy days from the indictment or the first appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). If the defendant is not brought to trial within this period, the indictment must be dismissed on the defendant's motion. Id. § 3162(a)(2). Excluded from the seventy day limit are delays granted for certain specific reasons. Id. § 3161(h). As relevant here, excludable periods include delays resulting from the filing of pretrial motions, § 3161(h)(1)(D), the unavailability of an essential witness, § 3161(h)(3)(A), the joinder of a codefendant for whom the Speedy Trial Act clock has not yet run, § 3161(h)(6), and a finding by the district court that "the ends of justice . . . outweigh the best interests of the public and the defendant in a speedy trial." § 3161(h)(7)(A).

A.

Porchay argues that her Speedy Trial Act rights were first violated in early 2007. Her trial was scheduled to begin on February 20, 2007, but on February 17, she moved for a continuance so that her attorney would have more time to prepare for trial. On February 20 a district court judge[2] granted Porchay's motion to continue the trial. Citing what is now codified at 18 U.S.C. § 3161(h)(7)(A),[3] the district court found that "the interests of justice served by granting the continuance outweigh[ed] the best interest of the public and defendant for a speedy trial," because failure to continue the trial would "deny counsel for defendant the reasonable time necessary for effective preparation for trial and to develop any and all proper defenses which might be averred in the defendant's behalf." It also stated that a "new trial date will

_____

[2] The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

[3] After the district court issued its order, Congress passed the Judicial Administration and Technical Amendments Act of 2008, 122 Stat. 4291, which made technical changes to the Speedy Trial Act, including renumbering several provisions. The amendments did not change the substance of any provision that is relevant here.

-6-

be set by separate order." On April 9, 2007 the court referenced its February 20 order, set the trial date for May 21, and again indicated that "the delay occasioned by this continuance shall be excludable under the provisions of the Speedy Trial Act."

Porchay argues that the district court violated the Act because "[e]ighty-five days elapsed between the court's February 20, 2007 order granting [her] request for a continuance and the May 16, 2007 order dismissing the third indictment." She contends (without citation to authority) that the district court was required to set the trial date at the time it granted her requested continuance. Since the court did not set the trial date until its April 9 order, she claims that it was the "functional equivalent of [the] nunc pro tunc order" disapproved in United States v. Suarez-Perez, 484 F.3d 537 (8th Cir. 2007).

In Suarez-Perez, we reversed a nunc pro tunc order for violating the Speedy Trial Act. In that case an August 9, 2004 motion to continue was granted, the time from August 6 to September 2004 was excluded, and the running of the speedy trial clock was stopped under § 3161(h)(8)(A). Id. at 541. An order then issued on January 20, 2005, long after the period covered by the continuance, purporting to amend the prior order to stop the clock at an earlier date (starting on June 29 rather than August 6). Id. We pointed out that the function of a nunc pro tunc order is "to correct clerical or ministerial errors," but "not to make substantive changes" or "rewrite history." Id. The court's January 20 order violated the defendant's right to a speedy trial because the change was a substantive correction and "fail[ed] to declare the requisite findings to support an ends of justice continuance." Id. at 542.

The district court in this case made ends of justice findings in the same order granting Porchay's continuance and in the order setting the trial date. The February 20, 2007 order expressly granted a continuance because of the scheduling needs of Porchay's attorney and excluded the time from the continuance to a new trial date in the ends of justice. The May 21 trial date was then set in a separate April 9 order

providing that the period between April 9 and May 21 was also excludable under the ends of justice provision. The April 9 order had no retroactive effect for it only excluded a prospective period from the running of the clock. This was a forward looking order, making an independent ends of justice finding which covered the time between the order and the trial; it had no retroactive effect. Suarez-Perez is inapposite. Furthermore, Porchay's 85 day calculation disingenuously included the time excluded by the continuance she herself sought. There were only 37 days between the subsequent April 9 order and the dismissal of the indictment on May 16. Her rights under the Speedy Trial Act were not violated.

Moreover, there was in addition an independent reason why there was no Speedy Trial Act violation in 2007. On March 8 (less than seventy days from the court's February 20, 2007 order), the government filed a third superseding indictment joining Porchay's sister Yolanda Summons. That started the running of the speedy trial clock anew. When a newly indicted defendant "is joined with a defendant whose speedy trial clock has already started running, the latter defendant's speedy trial clock will be reset" to that of the new defendant. United States v. Lightfoot, 483 F.3d 876, 885–86 (8th Cir.), cert. denied, 552 U.S. 1053 (2007); see 18 U.S.C. § 3161(h)(6). The joinder of Summons thus reset Porchay's speedy trial clock under Lightfoot and § 3161(h)(6). For all these reasons, the district court did not err in denying Porchay's September 2009 motion to dismiss.[4]

_____

[4] For reasons that are unclear Porchay waited until September 2009 to argue that the district court's actions in early 2007 had violated the Act. Because Porchay's argument is without merit, we need not address whether her motion should be barred as untimely.

B.

Porchay next argues that her Speedy Trial Act rights were violated after her first trial ended in a mistrial.[5] On December 1, 2008, the district court scheduled a new trial for December 9, but the government immediately moved for a continuance, arguing that several of its essential witnesses were unavailable on such short notice, either because they were out of state or incarcerated in federal prison facilities. On December 8, the district court granted the government's motion. Rejecting Porchay's arguments that it needed to make "specific findings" to exclude any delay due to unavailable essential witnesses, the court held that some of the government's essential witnesses were incarcerated and could not be made available by the trial date. It ordered that any "delay commencing the trial of this case occasioned by this continuance will be excludable under the provisions of the Speedy Trial Act, as provided by 18 U.S.C. § 3161(h)(3)(A)" and set a new trial date of May 12, 2009.

After waiting more than seventy days, Porchay moved in April 2009 to dismiss for lack of a speedy trial. She argued that the government had not "even allege[d] that any witness is an essential witness" and that the delay from December 8, 2008 to the May 12, 2009 trial date had exceeded the seventy day statutory limit. The district court denied Porchay's motion on the basis that it had "already ruled on this [essential witness] issue" in its December 8, 2008 order.

On appeal, Porchay repeats her argument that the government's failure to state early on the identity or location of its essential witnesses undermines any finding under § 3161(h)(3)(A) that the speedy trial clock was properly tolled. Porchay also argues that neither the court nor the government identified a single witness "who was

---

[5] Under the Act a mistrial requires the clock to be reset and the speedy trial period begins to run anew. See 18 U.S.C. § 3161(e); United States v. Ray, 250 F.3d 596, 601 (8th Cir. 2001), cert. denied, 535 U.S. 980 (2002).

so essential to the second trial that proceeding without him would be impossible or likely to result in a miscarriage of justice." According to Porchay, the 155 day delay from December 8, 2008 to May 12, 2009 was not excludable and her indictment should be dismissed. See 18 U.S.C. § 3162(a)(2).

Only one of the statutory provisions providing for tolling periods requires detailed findings. As the Supreme Court has observed, some periods of delay are "automatically excludable, *i.e.*, they may be excluded without district court findings," while others are excludable "only if the district court makes certain findings enumerated in the statute." Bloate v. United States, 130 S. Ct. 1345, 1351 (2010). The only statutory provision which requires detailed findings is § 3161(h)(7), which excludes periods of delay when the district court finds "that the ends of justice served by [a continuance would] outweigh the best interests of the public and the defendant in a speedy trial." In contrast, a continuance to ensure the availability of essential witnesses is one of the statutory grounds for excludable delay for which detailed findings are not required. See id. §§ 3161(h)(1)–(6); Bloate, 130 S. Ct. at 1351.

Porchay's argument is based on the erroneous premise that the district court was required to make detailed findings to justify delay caused by the unavailability of the government's essential witnesses. This argument is contrary to our case law. In United States v. Hohn, we rejected the argument that a district court must make "explicit" factual findings to support exclusions of time under the Speedy Trial Act other than under the "ends of justice" section which does require them. See 8 F.3d 1301, 1305 (8th Cir. 1993). In Hohn, the district court had excluded time under what is now § 3161(h)(1)(D), for delay resulting from a pretrial motion, but had not made explicit factual findings to support it.[6] We rejected appellant's argument that the court had to make findings in order for pretrial motion delay to be excluded. That is because under the Act a district court "is not required to make explicit findings for

---

[6] In Hohn the pretrial motion exclusion was codified at § 3161(h)(1)(F).

-10-

§ 3161(h)(1) delays." <u>Hohn</u>, 8 F.3d at 1305. The district court thus "did not err when it allowed the hearing to be continued without making findings." <u>Id.</u>

While the present case involves the essential witness exclusion instead of the pretrial motion provision, the reasoning in <u>Hohn</u> also controls here. Both cases involve statutory provisions for stopping the running of time which do not require findings to justify the exclusion. The district court in its December 8 order did not exclude time for delay under the ends of justice section, which does require findings. Instead, it expressly cited the essential witness provision in its order. It therefore did not need to make further findings about the identity of the witnesses or their specific locations. All that the essential witness exclusion requires are findings that a witness is either absent or unavailable and also essential. <u>See</u> 18 U.S.C. § 3161(h)(3). The district court made these findings twice—in its orders of December 8, 2008 and again on May 4, 2009. The requirements of the Act were thus satisfied.

Contrary to Porchay's assertions, the district court was well aware of the identity and location of the government's essential witnesses. It was already quite familiar with the case in December 2008, and the government's April 30 response in opposition to Porchay's motion to dismiss specifically named Frederick Coleman and Dondrick James as essential witnesses. The government's response also stated they were unavailable without three weeks advance notice because they were incarcerated at the federal prison in Forrest City, Arkansas. It further added that the district court had been well "aware of the policy of the United States Marshal requiring three weeks advance notice to transport incarcerated witnesses for trial" because it had granted writs to produce those witnesses for Porchay's first trial.

A witness is "essential" if he is "unquestionably important" to the case and the government has a "good faith belief that it will use that witness's testimony at trial." <u>United States v. Eagle Hawk</u>, 815 F.2d 1213, 1218 (8th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1012 (1988); <u>see also</u> S. Rep. No. 93-1021, at 37 (1974), <u>as reprinted in</u> Anthony

-11-

Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, at 123 (1980). A witness is "unavailable" whenever "his whereabouts are known but his presence for trial cannot be obtained by due diligence." 18 U.S.C. § 3161(h)(3)(B).

After reviewing the record, we conclude that the district court did not clearly err in finding that Coleman was an unavailable essential witness. As a convicted coconspirator, he could testify to Porchay's role in the charged conspiracy, including her ownership of a car in which over $200,000 was found and which had been modified to conceal kilograms of drugs. See Eagle Hawk, 815 F.2d at 1218. We reject Porchay's argument that Coleman's testimony would be merely cumulative or substantially irrelevant. Id. As a federal prisoner, he was not available until the Marshals Service could produce him for retrial. See 18 U.S.C. § 3161(h)(3)(B); United States v. Patterson, 277 F.3d 709, 711–12 (4th Cir. 2002). The district court did not abuse its discretion in denying Porchay's April 2009 motion to dismiss.

C.

Porchay argues for the first time on appeal that the 209 day delay between the second mistrial on May 15, 2009 and the start of her third trial on December 10, 2009 should have been counted under the speedy trial clock because the delay would not have occurred but for alleged Brady violations by the government. The government responds that there is no authority for Porchay's position and that much of the delay was due to the unavailability of her own attorney for the scheduled retrial date of May 18, 2009. The government also notes that Porchay filed numerous motions and appeals between September and December 2009 and that much of this period would be independently excludable under the Act.

We agree with the government that there was no Speedy Trial Act violation between May 15 and December 10, 2009. Porchay cites no authority to support her argument that a mistrial caused by the government's failure to disclose impeachment

information necessarily requires that all additional delays be counted against it regardless of the reasons for them. Moreover, Porchay's counsel asked for the continuance following the second trial due to personal and professional conflicts. Wanting to protect Porchay's Sixth Amendment right to effective assistance by counsel of her choosing, the district court selected a convenient retrial date that worked for her attorney as well as the government. It was not an abuse of discretion to do so.

D.

Porchay asserts also that the district court erred by not dismissing her case for violation of her right to a speedy trial under the Sixth Amendment. "[F]our separate enquiries" are relevant to determining whether a defendant's right under the Sixth Amendment have been violated. The pertinent questions are: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Doggett v. United States, 505 U.S. 647, 651 (1992). Porchay argues that the thirty nine months between her first appearance and her third trial are "presumptively prejudicial," that she cannot be blamed for any delays, that she aggressively pressed her speedy trial rights, and that she suffered prejudice by "having a Sword of Damocles hovering over her" for more than three years. See, e.g., United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003); United States v. Walker, 92 F.3d 714, 717 (8th Cir. 1996).

We have previously explained that it would be "unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not." Titlbach, 339 F.3d at 699. Even if we were to assume the delay between Porchay's arrest and ultimate trial was presumptively prejudicial, see Walker, 92 F.3d at 717, we would conclude that much of the delay in her case was attributable to her own actions. She filed well over fifty documents during the nearly three years she was under

-13-

indictment, including motions which required responses and hearings, notices of interlocutory appeal, and written motions for continuance. See United States v. Aldaco, 477 F.3d 1008, 1019 (8th Cir. 2007) (presenting more than forty five oral and written motions meant the delay was attributable to the defendant). More specifically, Porchay litigated property issues, sought the return of cash and property, and sought Hyde Amendment attorney fees and costs. After she lost these motions, she brought an unsuccessful appeal to our court. See United States v. Porchay, 533 F.3d 704 (8th Cir. 2008). Porchay even sought a stay of the proceedings in this appeal while her previous appeal was pending. We conclude that Porchay's Sixth Amendment speedy trial rights were not violated.

III.

Porchay next argues that the district court erred by denying her motion to suppress based on an argument that Agent Woodie's affidavit supporting the search warrant contained material misrepresentations and omissions in violation of Franks v. Delaware. We review the district court's factual findings in support of its denial of a motion to suppress for clear error and its legal determination of probable cause de novo. United States v. Stevens, 530 F.3d 714, 717 (8th Cir.), cert. denied, 129 S. Ct. 654 (2008). The evidence obtained from a search warrant must be suppressed if the defendant proves by a preponderance of the evidence that the search warrant affiant knowingly and intentionally, "or with reckless disregard for the truth, included a false statement in the warrant affidavit and the affidavit does not establish probable cause without the false statement." Id. at 718.

In her motions to suppress, Porchay argued that Agent Woodie misrepresented the amount and nature of his experience in drug cases and falsely stated that Coleman saw weapons in the Bradley Drive residence, misleading the magistrate judge into believing that evidence of crime would be located there. The district court denied this motion without comment.

-14-

On appeal, Porchay renews her argument that Agent Woodie inflated his biography to hold himself out as a "trained FBI narcotics field agent," and misrepresented what Coleman had told him "regarding Kelley and weapons." Porchay specifically argues that Woodie misrepresented that Coleman saw numerous firearms at her residence when in fact Coleman told him nothing about the place, had never been there, and had never seen weapons, drugs, or other signs of unlawful activity there. The government responds that the warrant affidavit reported Woodie's sufficient experience and training. With regard to what Coleman saw at Porchay's residence, the government denies that his statements were misrepresentations. It further argues that "plenty of probable cause remains" even if those statements were excised from the affidavit.

Woodie's training and experience were adequately set forth in the warrant affidavit. He did not need to explain in detail that his experience in some drug cases was as a FBI paraprofessional rather than as a special agent or field agent. There is also additional probable cause to support the search warrant, including Kelley's confession, his criminal history, his and Porchay's lack of significant legitimate income, and the joint residence he and Porchay shared on Bradley Drive. See Stevens, 530 F.3d at 719; United States v. Engler, 521 F.3d 965, 971 (8th Cir. 2008); United States v. Barr, 32 F.3d 1320, 1322 (8th Cir. 1994). The Bradley Drive location was also the registered address for the car in which Kelley was stopped by the police and in which admitted drug proceeds and paraphernalia were found.

Porchay's Franks argument also fails because nothing in the record indicates that Agent Woodie's statements were made with intentional or reckless disregard for the truth. Without adducing any evidence that Woodie at least "entertained serious doubts" as to the truth of the statements he made, Stevens, 530 F.3d at 718, Porchay cannot succeed on her Franks claim. See also United States v. Clapp, 46 F.3d 795, 801 (8th Cir. 1995); United States v. Falls, 34 F.3d 674, 681–82 (8th Cir. 1994). The district court did not err in denying Porchay's motion to suppress.

IV.

Porchay next argues that the indictment should have been dismissed with prejudice because the government withheld impeachment information that would have resulted in a different verdict.  We review for abuse of discretion the district court's denial of a motion to dismiss an indictment due to improperly withheld information.  See United States v. Babiar, 390 F.3d 598, 600 (8th Cir. 2004), cert. denied, 543 U.S. 1174 (2005); United States v. Manthei, 979 F.2d 124, 126–27 (8th Cir. 1992).

At Porchay's second trial in May 2009, several jailhouse informants testified against her in exchange for reduced sentences.  Two of these witnesses had not identified Porchay at the time Agent Woodie showed them her photo before trial, but the government did not inform the defense before trial that in fact they had mistaken other people for her.  During the second day of trial, the defense was informed about this oversight, and Porchay moved for a mistrial and for dismissal with prejudice.  On May 14, 2009, the district court declared a mistrial but denied the motion to dismiss. Porchay moved to dismiss the indictment for prosecutorial misconduct.  The district court denied that motion in November 2009, stating that it did "not believe that the withholding of the line-up information was deliberate" and that it was an "unfortunate oversight" but not deliberate misconduct.

On appeal Porchay points to the government's duty to disclose this information before trial.  The government does not claim otherwise.  Porchay argues that because the witnesses' misidentification of her was impeachment information required to be disclosed under Brady v. Maryland, 373 U.S. 83 (1963), its nondisclosure was "so egregious as to warrant not only a new trial, but a dismissal following the second mistrial" as well.  The government responds by pointing out that disclosure of impeachment information during trial is not a Brady violation unless the disclosure comes too late to respond to it.  See United States v. Almendares, 397 F.3d 653, 664

-16-

(8th Cir. 2005). In this case, the delayed disclosure did not prejudice Porchay because she became aware of it in time to use it for impeachment purposes, which is exactly what she did at her third trial.

The government's reasoning on this point is supported by the case law. "Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, Brady is not violated." United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996); see United States v. Boykin, 986 F.2d 270, 276 n.6 (8th Cir.), cert. denied, 510 U.S. 888 (1993); Nassar v. Sissel, 792 F.2d 119, 121 (8th Cir. 1986). We agree that the government should have produced this information before trial, but its inadvertent failure to do so did not require the district court to dismiss Porchay's indictment with prejudice. The district court's decision to grant a mistrial permitted Porchay to have a new trial, and it is significant that newly available evidence did not lead a defense verdict. The district court did not abuse its discretion in denying Porchay's motion to dismiss the indictment with prejudice.

V.

Porchay further argues that the district court abused its discretion in denying her motion for a mistrial at her third trial after her former codefendant Harold Kelley invoked the Fifth Amendment in the presence of the jury. We review the district court's decision to permit a witness to invoke the Fifth Amendment privilege for abuse of discretion. United States v. Washington, 318 F.3d 845, 856 (8th Cir.), cert. denied, 540 U.S. 884 (2003).

At her third trial, the government called Kelley to testify about certain nonincriminatory details of his contact with Porchay. Kelley had already pled guilty to conspiring to possess with intent to distribute cocaine and had been sentenced, and had not filed an appeal during the time permitted. The government's position is that he therefore had no residual Fifth Amendment rights at the trial when he was called

-17-

to testify.  See Mitchell v. United States, 526 U.S. 314, 326 (1999).  Before the government could even ask a question Kelley stated that he "would like to take my Fifth Amendment right."  The prosecutor assured the court that Kelley would only be asked questions that would not incriminate him.  Porchay's attorney, who also represented Kelley, objected. Kelley refused to answer any questions, including what his name was. Porchay then moved for a mistrial which the district court denied.

Porchay now renews her argument that the government called Kelley merely to force him to invoke his Fifth Amendment right in front of the jury, raising an inference that his privilege assertion negatively implicated her. See Namet v. United States, 373 U.S. 179, 186 (1963); United States v. Doddington, 822 F.2d 818, 822 (8th Cir. 1987).  The government responds by arguing that Kelley's invocation of his Fifth Amendment privilege was frivolous in those circumstances.  Moreover, it did not allude to Kelley's refusal to testify after he was dismissed.

We agree that Kelley's invocation of the Fifth Amendment was frivolous since it came after judgment had been entered in his case which he had not appealed.  The government did not try to use his mention of the Fifth Amendment to create a negative inference against Porchay.  When it is "perfectly clear, from a careful consideration of all the circumstances" that a "answer[s] cannot possibly have such [a] tendency to incriminate" the witness, the Fifth Amendment privilege may not be invoked.  Hoffman v. United States, 341 U.S. 479, 488–89 (1951), and cases cited. Porchay did not demonstrate any prejudice caused by Kelley's five minutes of ineffectual testimony. We conclude that the district court did not abuse its discretion in denying Porchay's motion for a mistrial.

VI.

Finally, Porchay argues that the district court clearly erred in denying her request to remain on release after sentencing but pending appeal.  It had earlier

-18-

allowed a codefendant, Michelle McBride, to remain free pending sentencing. This issue might have been raised by way of interlocutory appeal, see 18 U.S.C. § 3145(c), but it was not. At this point we conclude that the district court did not clearly err in denying Porchay's motion for release. In cases like hers a judicial officer shall order a defendant detained unless there is a substantial likelihood that a motion for acquittal or new trial will be granted, or the government has recommended that no imprisonment be imposed. See 18 U.S.C. § 3143(a)(2)(A). Neither exception applies here, and the district court did not err in denying her request.

VII.

After a thorough review of the lengthy record and resolution of the issues raised, we affirm the judgment of the district court.

BYE, Circuit Judge, dissenting

Under the Speedy Trial Act ("the Act"), "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness" is excluded from the seventy-day time limit. 18 U.S.C. § 3161(h)(3)(A). In Jackie Porchay's case, the district court excluded time pursuant to § 3161(h)(3)(A) without a single mention by the government of the identity of its witnesses, why they were essential, or whether they were, in fact, unavailable. Due to the government's failure to meet its burden of proof by demonstrating its essential witnesses were unavailable, as well as its failure to even move for a continuance under § 3161(h)(3), I would conclude Porchay's rights under the Act were violated. I therefore dissent.

Under the Act, if the defendant is not brought to trial within seventy days from the later of the indictment or the first appearance, 18 U.S.C. § 3161(c)(1), the indictment must be dismissed on the defendant's motion. United States v. Suarez-

-19-

Perez, 484 F.3d 537, 540 (8th Cir. 2007). However, certain "periods of delay" are excluded from the time computation, including any period resulting from the unavailability of an essential witness. 18 U.S.C. § 3161(h)(3)(A). While the defendant ordinarily bears the burden of proof to show her rights under the Act have been violated, United States v. Williams, 605 F.3d 556, 572 (8th Cir. 2010), the government bears the burden of proof with regard to exclusions for procuring essential witnesses under § 3161(h)(3). United States v. Elmardoudi, 501 F.3d 935, 941 n.6 (8th Cir. 2007).

In the instant matter, after the first mistrial occurred on November 26, 2008, the district court desired to retry the matter on December 9, 2008. Believing it was impossible to be ready for trial on that date, the government moved to continue the trial. The government's motion for a continuance stated, in its entirety:

> This matter is currently set for re-trial on Tuesday, December 9, 2008.
>
> The United States respectfully requests that the trial be continued on the grounds that it is physically impossible for the United States to be ready for trial on that date due to the number and location of witnesses, some of whom live out of state, which the government would have to serve with subpoenas to compel attendance. Further, the Marshal's [sic] require three weeks notice to obtain the attendance of witnesses who are incarcerated and it would plainly be impossible to provide such notice given the current trial date. And finally, the parties do not have a copy of the trial transcript.
>
> Because of time constraints, the Assistant United States Attorney has not [had] time to contact the defendant's attorney to see if he opposes the continuance or not.
>
> Therefore, for good cause shown, the United States respectfully requests that its Motion for Continuance be granted and that the time be excluded for purposes of the Speedy Trial Act.

Porchay filed an extensive response in opposition to the government's motion, challenging each of the government's asserted bases for its motion. Despite Porchay's various objections, the government failed to file a reply brief providing any more information to support its motion.

On December 8, 2008, without holding an evidentiary hearing on the matter, the district court granted the government's motion, stating:

> According to the Prosecution's motion, essential witnesses, who are incarcerated in the Bureau of Prisons, cannot be made available by the trial date because the U.S. Marshal requires three weeks to produce incarcerated witnesses. For good cause shown, the motion is GRANTED. Accordingly, this case is removed from the Court's current trial docket of December 9, 2008, and is rescheduled to begin Tuesday, May 12, 2009, at 9:00 a.m.

In its order, the court also noted the delay resulting from the continuance would be excluded from the speedy trial calculation pursuant to § 3161(h)(3)(A).

Porchay contends the court erred by granting the government's motion for continuance because the government failed to identify any witnesses it claimed were unavailable, the witnesses' locations, or why it could not produce the witnesses for trial. In effect, Porchay argues the government failed to demonstrate its witnesses were essential, and thus the court should have denied the continuance or included the resulting 155-day delay in the speedy trial calculation and dismissed the case.

I agree. While the Act does not define who constitutes an "essential witness," this court has held "[w]here a witness is unquestionably important, and the government has a good faith belief that it will use that witness's testimony at trial, that witness may be deemed 'essential' for purposes of the Speedy Trial Act." United States v. Eagle Hawk, 815 F.2d 1213, 1218 (8th Cir. 1987). On the other hand, if

"the witness's anticipated testimony will be merely cumulative, or substantially irrelevant, that witness should be deemed non-essential." Id. In this case, the district court simply had no information with which to make the determination alluded to in Eagle Hawk as to whether the government's witnesses were essential. In its motion before the district court, the government failed to identify a single witness, much less allege why any witness was essential. Cf. United States v. Saeku, No. 08-4949, 2011 WL 1594918, at *7 (4th Cir. April 28, 2011) (per curiam) (concluding the government showed its witnesses were essential because "the descriptions of anticipated testimony in the continuance motion were sufficiently detailed—the motion precisely (if briefly) described the anticipated testimony of both witnesses and how that evidence related to the charges"). In fact, the word "essential" did not even appear in the government's motion, which is not surprising given the government's concession it was unaware of the existence of the essential witness exclusion. Similarly, although the government blindly invoked the Marshals' advance notice requirement, it neglected to mention the location of its witnesses or whether the Marshals had transferred the incarcerated individuals back to their original facilities after the mistrial. See 18 U.S.C. § 3161(h)(3)(B) ("[A]n essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence."). Thus, the district court also had before it no information with which to make a determination as to the witnesses' availability.

In the face of these obvious shortcomings in the government's motion, the majority focuses primarily on two tangential procedural aspects. First, the majority places great weight on the absence of any requirement placed upon the district court to make detailed findings when ruling on a § 3161(h)(3) exclusion. While it is certainly true a district court need not make detailed findings in granting a § 3161(h)(3) exclusion, United States v. Carrillo, 230 F.3d 1364, at *1 (8th Cir. 2000) (per curiam), this is a red herring to the central issue of whether the government met

-22-

its burden of proof in moving for the continuance. Namely, regardless of whether the district court was required to make detailed factual findings, it still had to have a basis to exclude time under § 3161(h)(3). Given the absence of the requisite information in the government's motion and the lack of a hearing on the matter, it is difficult to conceptualize how the district court made such a determination.

Second, the majority cites two witnesses the government alleged were essential in the government's April 30, 2009, response to Porchay's motion to dismiss. The majority also goes into some detail about the importance of one of these witnesses in particular, Frederick Coleman. As an initial matter, I disagree with the majority's efforts to address Coleman's value to the government's case because it was within the district court's province to make such a determination. See United States v. Koller, 956 F.2d 1408, 1413 (7th Cir. 1992) ("The determination of preliminary questions, such as the unavailability of a witness, is normally determined by the district judge in the exercise of his or her discretion."); Saeku, 2011 WL 1594918, at *7 ("Whether a witness is essential is a quintessential question of fact.") (internal quotation marks and citation omitted). More importantly, I would conclude the government acted too little and too late in identifying and explaining the essential nature of its witnesses for the first time in its response on April 30, 2009 – which was long after the seventy-day limit had passed. As the district court had already granted the continuance on December 8, 2008, the information presented by the government four months later is irrelevant.

In sum, the government failed to present any evidence demonstrating who its witnesses were, why they were essential, or what efforts it had undertaken in order to secure their presence for trial. I would thus conclude the district court erred by excluding time pursuant to § 3161(h)(3). See United States v. McNeil, 911 F.2d 768, 773 (D.C. Cir. 1990) (per curiam) ("[T]he court, when it granted the Government's motion for a continuance, had no information whatsoever upon which to make a

-23-

reasoned decision."). Moreover, the government's conclusory statement regarding the Marshals' advance notice requirement did not, standing alone, provide the court with a basis upon which to grant a continuance under § 3161(h)(3). Compare United States v. Burrell, 634 F.3d 284, 292 (5th Cir. 2011) (per curiam) (concluding the essential witness exclusion could not apply where the government failed to present any evidence showing its witness's presence could not be obtained through reasonable efforts) and United States v. Ferguson, 574 F. Supp. 2d 111, 115 (D.D.C. 2008) (concluding an exclusion of time under § 3161(h)(3) was not warranted where the government failed to present any evidence to support its claim the Marshals were unable to transport two of its witnesses in time for trial) with United States v. Patterson, 277 F.3d 709, 711-12 (4th Cir. 2002) (holding the district court did not err in granting a continuance where the government presented testimony from a Deputy Marshal describing the hardship it would work on the agency).

After concluding the district court violated Porchay's rights under the Act, I would proceed to consider the proper sanction. Under the Act, dismissal of the indictment is mandatory upon the defendant's motion. See 18 U.S.C. § 3162(a)(2) ("If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant."). "Although the Act mandates a dismissal of the indictment, the trial court retains discretion as to whether the dismissal should be with or without prejudice." United States v. Dezeler, 81 F.3d 86, 89 (8th Cir. 1996); see also Zedner v. United States, 547 U.S. 489, 499 (2006) ("[T]he district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice."). Accordingly, I would remand to the district court to determine whether to dismiss the indictment with or without prejudice.

Based on the violation of Porchay's speedy trial rights, I respectfully dissent from the majority's decision to affirm the district court's denial of Porchay's motion

-24-

to dismiss. Because I would reverse Porchay's convictions, vacate her sentence, and remand to the district court with instructions to dismiss the indictment and to determine whether the dismissal is with or without prejudice, I express no opinion regarding Porchay's other arguments on appeal.

_____